PER CURIAM.
We have for review a complaint of The Florida Bar and referee’s report regarding alleged ethical breaches by Robert Jerome Nesmith. We have jurisdiction. Art. Y, § 15, Fla.Const. We approve the report.
The following facts are contained in the referee’s report:
1.The respondent represented the Garlic Crab Corporation, owned by Michael Passas. During 1990 and early 1991, the respondent was on a prepaid retainer basis by virtue of an unwritten contract. However, in or about August 1991, a written contract was executed in which the respondent was obligated to represent the Garlic Crab Corporation in civil matters. A fee of $2,000 was paid by Mr. Passas as a retainer in this amount.
2. The respondent was experiencing financial difficulties.
3. The respondent admits that on or about November 15, 1991, he approached Mr. Passas about obtaining a personal loan from him in the amount of $4,500. .
4. He advised Mr. Passas that he needed the funds to avoid foreclosure on his home.
5. Mr. Passas agreed to loan the funds and drew a check from his corporate account. ...
6. The respondent admitted that he failed to advise Mr. Passas in writing to seek the advice of independent counsel pri- or to making the loan.
7. Mr. Passas testified that the respondent failed to advise him either orally or in writing that he should seek independent counsel prior to entering into the loan transaction.
8. The respondent, however, testified that he orally advised Mr. Passas that he should seek counsel.
9. Mr. Passas did not agree in writing to the transaction prior to making the loan.
10. A hand written promissory note was prepared at the time of the transaction by the respondent in which he agreed to repay Mr. Passas his $4,500, with no interest, within one month.
[[Image here]]
12. The respondent made no payments to Mr. Passas on the note within the stated time. The respondent admits that Mr. Passas attempted, without any success, to obtain payment from him and that Mr. Passas eventually filed a collection action in the County Court for Orange County.
[[Image here]]
17. Although the check used by Mr. Passas to make the loan to the respondent was drawn on the account of the Garlic Crab Corporation, the promissory note was made in favor of Mr. Passas as an *1358 individual and the suit and judgment also were in his individual capacity.
[[Image here]]
21. After the entry of the judgment, Mr. Passas began attempting to collect the judgment_ The service of a subpoena duces tecum in aid of execution was not accomplished upon Mr. Nesmith, however, a levy against Mr. Nesmith’s automobile to satisfy the judgment was attempted. The deputy sheriff eventually found Mr. Nes-mith who was in the possession of his car at the time.
22. When apprised of the fact the levy had been made on his automobile, Mr. Nesmith opted to pay the judgment at that time and invited the deputy to accompany him to his home where he made payment of the entire judgment to the deputy sheriff.
23. On November 25, 1992, the County Court, Ninth Judicial Circuit, entered a second judgment awarding costs to Mr. Passas in the amount of $84.25 with the said amount to bear interest at the rate of 12% a year. This judgment represented costs incurred in attempting to serve the subpoena duces tecum in aid of execution.
24. As of the date of the final hearing in this matter, the respondent had not paid the cost judgment referred to above.
The referee found that Nesmith did not engage in an impermissible conflict of interest in obtaining the loan. The corporation, not Mr. Passas, was Nesmith’s client, and the Bar should not be used as a collection agency in an ordinary civil action:
25. I find that the respondent did not engage in an impermissible conflict of interest by soliciting a short term loan from Mr. Passas. He orally advised Mr. Passas that he had the right to consult with another attorney and Mr. Passas declined to do so. This was a personal business matter between the two gentlemen and was unrelated to respondent’s representation of Mr. Passas’ corporation.
26. I find that this is a civil matter best resolved by the courts and not through a disciplinary proceeding. The problems experienced by Mr. Passas are not unusual in a debt collection action and the bar should not be used as a collection agency.
The referee recommended that Nesmith be found not guilty of the allegations contained in the complaint, and noted that Nesmith had no prior disciplinary record.
The Florida Bar (the Bar) petitioned for review and claims that the referee erred in concluding that Nesmith did not violate Rule Regulating the Florida Bar 4-1.8. The Bar claims that Passas was Nesmith’s client and that the writing requirements of rule 4^1.8 were thus implicated. Because Nesmith did not put the terms of the transaction in writing and failed to obtain Passas’ written consent, the Bar contends, the rule was violated. The Bar- asks that he be suspended for sixty days.
Rule 4-1.8 forbids a lawyer from entering into a business transaction with a client unless specific conditions are met:
RULE 4-1.8 CONFLICT OF INTEREST; PROHIBITED TRANSACTIONS
(a) Business Transactions With or Acquiring Interest Adverse to Client. A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security, or other pecuniary interest adverse to a client, except a lien granted by law to secure a lawyer’s fee or expenses, unless:
(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner that can be reasonably understood by the client;
(2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and
(3) the client consents in writing thereto.
R. Regulating Fla. Bar 4-1.8. The plain language of this rule requires that the terms of the transaction be disclosed to the client in writing and that the client consent in writing.
The record in the present case supports the referee’s finding that the corporation, not Mr. Passas, was Nesmith’s client. It is un- *1359 controverted that for a fee of $2,000 Nesmith entered into a continuing contract with the corporation to represent it in civil matters. No evidence was adduced showing that Nes-mith was under contract to Passas individually to represent him in personal matters.
The record also supports the referee’s finding that Passas entered into the loan in his individual, not corporate, capacity. Although Passas was the chairman and president of the corporation and owned a majority of its issued shares, testimony established that Passas intermingled his business and personal matters and acted in his capacities as sole shareholder and individual interchangeably. Nesmith and Passas maintained a close personal as well as professional relationship. We note that although the check for the loan was drawn on the corporate account, the promissory note was made in favor of Passas individually, the lawsuit to enforce payment was filed by Passas individually, and the judgment was in favor of Pas-sas individually.
Competent, substantial evidence thus supports the referee’s finding that there was no attorney/client relationship involved in Pas-sas’ loan to Nesmith. We will not second-guess the referee on this factual matter. Accordingly, we approve the referee’s recommendation that Nesmith be found not guilty of violating rule 4-1.8.
We note that the obvious purpose of the writing requirement in rule 4-1.8 is to avoid a conflict of interest wherein a client is inadequately apprised of the nature and terms of a business transaction with his or her lawyer. This was never in issue in the present ease. All parties are in agreement that the entire amount of the loan, $4,500, was due with no interest one month after the loan was made. This was spelled out clearly in the promissory note prepared by Nesmith and signed by both Nesmith and Passas. The only real issue was how Passas was going to collect on the note once it became past due. Even if rule 4-1.8 had been followed, as the Bar claims it should have been, this would have done nothing to solve the collection problem.
We approve the referee’s report in its entirety. We find Robert Jerome Nesmith not guilty of violating rule 4-1.8, and impose no disciplinary measures.
It is so ordered.
SHAW, KOGAN, HARDING and ANSTEAD, JJ., concur.
GRIMES, C.J., and OVERTON, J., dissent.
WELLS, J., is recused.