841 So.2d 729 (2003)
In re: Kathleen M. BILBE
No. 2002-B-1740.
Supreme Court of Louisiana.
February 7, 2003.

*730 ATTORNEY DISCIPLINARY PROCEEDINGS.
PER CURIAM.
This disciplinary matter arises from four counts of formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Kathleen M. Bilbe, an attorney licensed to practice law in the State of Louisiana.

FORMAL CHARGES

Counts I and IIThe Immigration Matter
In late 1996, Lex Magauen Joseph retained respondent to represent him in an ongoing immigration proceeding. Specifically, Mr. Joseph, who is a citizen of St. Lucia, had sought to have his immigration status in the United States adjusted to that of a permanent resident by virtue of his marriage to an American citizen.[1] In March 1997, respondent filed with the Immigration Court an application for adjustment of Mr. Joseph's status. The court proceeding was then continued for a period of several months to allow time for the Immigration and Naturalization Service (INS) to process the Immigrant Visa Petition (Form I-130) filed on behalf of Mr. Joseph, without approval of which the court could not consider granting the application for adjustment of status.
Mr. Joseph's case was subsequently set for a status hearing on August 7, 1997. On June 9, 1997, respondent filed a motion to reset the August 7 hearing, stating that she would be unavailable on that date. Respondent also represented to the court that the motion was not opposed by John *731 Carté, the Assistant District Counsel for the INS. In fact, however, in a previous telephone conversation with respondent, Mr. Carté had voiced his unequivocal objection to respondent's request to reset the hearing, and he so indicated in the written opposition he filed with the court on June 11, 1997. The court ultimately denied respondent's motion based on Mr. Carté's opposition, and the August 7 hearing went forward as scheduled. When the presiding judge, United States Immigration Judge Jeffrey Zlatow, confronted respondent at the hearing concerning her false representation that her motion was not opposed, her response was simply to complain about the relevancy of the matter to the issue of Mr. Joseph's application for adjustment of status. Respondent then began to demand that the court decide the application for adjustment of status immediately.[2]
When Judge Zlatow inquired of respondent whether Mr. Joseph's Immigrant Visa Petition had been approved, she told him that it had been approved, but in fact, it had not. Judge Zlatow informed respondent that he would be forced to deny Mr. Joseph's application for adjustment of status in the absence of an approved Immigrant Visa Petition. When respondent persisted in her argument that the Immigrant Visa Petition had been approved, Judge Zlatow asked her to produce an approval notice which would substantiate her assertion. In response, respondent showed the judge a copy of a notice informing Mr. Joseph that he would be required to appear for an interview with the INS in connection with the adjudication of his Immigrant Visa Petition. Judge Zlatow patiently and repeatedly explained to respondent that the "notice of interview" form is not a notice of the approval of the Immigrant Visa Petition; nevertheless, respondent continued arguing with Judge Zlatow that the Immigrant Visa Petition had been granted and that the application for adjustment of status was ripe for the court's consideration. Judge Zlatow reminded respondent that he would be forced to deny Mr. Joseph's application for adjustment of status in the absence of an approved Immigrant Visa Petition, and asked respondent whether she was certain she wanted a ruling on the application that day. When respondent replied in the affirmative, Judge Zlatow turned to Mr. Joseph, explained the situation, and asked him whether he wished to have respondent continue to represent him. Respondent interjected and refused to allow Judge Zlatow to speak with her client. She also continued to argue with Judge Zlatow about the approval of the Immigrant Visa Petition and the court's adjudication of Mr. Joseph's application for adjustment of status, and began to demand that the court accept for filing certain exhibits that she wished to present. Finally, Mr. Joseph spoke up and advised the court that he wanted to terminate respondent's representation. Mr. Joseph also told Judge Zlatow that respondent had ignored his earlier instructions that she request a continuance of the case pending approval of the Immigrant Visa Petition. Judge Zlatow ordered respondent to leave the courtroom and referred the matter to the INS for an investigation as to respondent's qualifications and her conduct during the course of the proceeding. Judge Zlatow also granted Mr. Joseph a continuance of his case so that he could obtain new counsel.
*732 On February 6, 1998, a petition seeking attorney discipline was filed against respondent by the Office of the General Counsel of the INS. The petition charged that respondent violated 8 C.F.R. § 292.3[3] when she willfully engaged in the following conduct in the course of her representation of Mr. Joseph:
1. The first count charges that respondent falsely represented to the court that her "Motion to Reset Hearing" was not opposed by the Assistant District Counsel for the INS.
2. The second and third counts charge that respondent misled Judge Zlatow and her client as to the status of Mr. Joseph's Immigrant Visa Petition.
3. The fourth count charges that respondent misled Judge Zlatow when she falsely represented to the court that Mr. Joseph wanted the court to rule on his application for adjustment of status, when in fact, Mr. Joseph had instructed respondent to request a continuance of the matter.
4. The fifth and six counts charge that during the August 7, 1997 hearing, respondent made frivolous legal arguments having no basis in law or fact and engaged in contumelious or otherwise obnoxious conduct before Judge Zlatow.
In her answer to the petition, respondent admitted the first, second, fourth, and fifth counts are true; she did not answer the third count and complained the sixth count is "vague and incomprehensible." Respondent also attacked Judge Zlatow, whom she accused of violating the Code of Judicial Conduct by, among other things, failing to be patient, dignified, and courteous during the Joseph case.[4]
After consideration of the record of the proceedings, the Chief Immigration Judge, Michael J. Creppy, found the charges against respondent were established "by clear, convincing and unequivocal evidence." By order dated June 2, 1998, respondent was suspended from practice before the Executive Office for Immigration Review and the INS for a period of five years.
The ODC was notified of the sanctions against respondent by letter from Peggy Philbin, General Counsel of the United States Department of Justice, Executive Office for Immigration Review. Respondent failed to provide a substantive response to the complaint. As a result, the ODC requested that respondent give a sworn statement concerning the matter. Respondent refused, asserting that the ODC does not have the authority to depose her. A subpoena was then issued for respondent's appearance on November 18, 1998. Although the subpoena was personally served on respondent, she did not appear. Instead, on the day of the sworn statement, respondent filed with this court a motion to quash the subpoena. We denied the motion on November 24, 1998. In re: Complaint No. 7811, 98-2880 (La.11/24/98).[5]
*733 The ODC alleges that respondent's conduct in the immigration matter violated the following Rules of Professional Conduct: Rules 1.1 (failure to provide competent representation to a client), 1.2 (scope of the representation), 1.3 (failure to act with diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 3.1 (meritorious claims and contentions), 3.3 (candor toward the tribunal), 3.4(c) (knowing disobedience of an obligation under the rules of a tribunal), 3.5(c) (engaging in conduct intended to disrupt a tribunal), 8.1(b) (knowing failure to respond to a lawful demand for information from a disciplinary authority), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 8.4(d) (engaging in conduct prejudicial to the administration of justice), and 8.4(g) (failure to cooperate with the ODC in its investigation).

Counts III and IVThe Hormel Matter
In 1993, respondent filed an age discrimination suit on behalf of her client, Kurt Schneider, against the Hormel Foods Corporation, Mr. Schneider's former employer. Schneider v. Geo. A. Hormel & Co., No. 93-1264, 1996 WL 191632 on the docket of the United States District Court for the Eastern District of Louisiana. On April 26, 1995, respondent telephoned James Cavanaugh, the Assistant Secretary and Senior Attorney of the Hormel Foods Corporation, to discuss a settlement of Mr. Schneider's case. By letter dated April 27, 1995, Hormel's retained counsel, James Morgan of the New Orleans law firm of Fisher & Phillips, wrote to respondent and advised her that he represented Hormel in the case,[6] and therefore that "it is appropriate for you to contact [me] prior to engaging in direct client contact." Over the next 3½ years, Mr. Morgan wrote six more letters to respondent reiterating his request that she not contact Hormel's executives directly. Nevertheless, respondent did so on nine occasions between December 1995 and May 2000, both by letter and by telephone, without the prior knowledge or consent of Mr. Morgan. In addition to contacting Mr. Cavanaugh, respondent also contacted Mahlon Schneider, Hormel's Vice President and General Counsel; Joel Johnson, Hormel's President and Chief Executive Officer; and Mike MacLean, a Human Resources official at Hormel, concerning Mr. Schneider's case. Five of respondent's contacts with the Hormel executives occurred after the litigation was finally concluded in Hormel's favor.[7]
In connection with the case against Hormel, respondent hired a court reporting firm, Carol F. Gallo d/b/a Mid-South Reporting Service, to take the deposition testimony of a witness. In February 1995, Ms. Gallo billed respondent $480.20 for her services. Respondent has conceded that the charge is reasonable and *734 she has made a partial payment of $50, but she refuses to remit the balance.[8]
The ODC alleges that respondent's conduct in the Hormel matter violated the following provisions of the Rules of Professional Conduct: Rules 4.2 (communication with a person represented by counsel), 8.4(a), and 8.4(d).

DISCIPLINARY PROCEEDINGS
On January 25, 2000, the ODC filed four counts of formal charges against respondent. In her answer to the formal charges, respondent denied any misconduct in connection with the immigration matter. With respect to the Hormel matter, respondent admitted that she contacted Mr. Cavanaugh and that she contacted Hormel executives after the conclusion of the litigation, but denied the remainder of the allegations. Finally, respondent admitted that she had not fully paid a court reporter's bill, but asserted that her failure to pay the bill does not constitute an unreasonable failure to pay debts which arose in the litigation stream of commerce.

Hearing Committee Recommendation
This matter proceeded to formal hearing on the merits on October 26, 2000. The ODC introduced a volume of documentary evidence in support of the formal charges and called Mr. Morgan to testify in person before the committee. Respondent appeared and cross-examined Mr. Morgan; however, she did not testify on her own behalf.
After reviewing the record of this matter, the hearing committee made the following factual findings:

Count I
1. Respondent was suspended from the practice of law before the Executive Office for Immigration Review and the INS for a period of five years;
2. Respondent's action before Judge Zlatow was willfully misleading and deceitful when she advised him that an Assistant District Counsel had no objection to a motion to reset a hearing;
3. Respondent's action before Judge Zlatow was willfully misleading and deceitful when she advised him that the Immigrant Visa Petition had been approved by the INS;
4. Respondent's action before Judge Zlatow was willfully misleading and deceitful when she advised Mr. Joseph as to the status of his Immigrant Visa Petition with the INS;
5. Respondent's action before Judge Zlatow was willfully misleading and deceitful when she advised the judge that Mr. Joseph wanted the court to rule on his application when, in fact, he instructed respondent to request a continuance of the matter;
6. Respondent engaged in grossly inappropriate behavior and contumelious or otherwise obnoxious conduct before Judge Zlatow "by disrupting the proceeding before him when she threw the exhibits at the judge and storm[ed] back into the courtroom after being escorted out twice, all of which created a concern for the safety of the people in the courtroom."
Based on these factual findings, the committee determined that respondent's conduct before Judge Zlatow violated Rules 1.2, 1.4, 3.1, 3.3, 3.4(c), 3.5(c), 8.4(a), 8.4(c), and 8.4(d) of the Rules of Professional Conduct. However, the committee found no violation of Rules 1.1 and 1.3, reasoning that respondent's conduct with respect *735 to her client did not reflect a lack of legal knowledge, skill, or preparation, nor a lack of reasonable diligence or promptness.

Count II
7. Respondent has no basis in law for her position that the ODC had no authority to interview or depose her;
8. Respondent failed to appear before the ODC after she was served with a subpoena to do so.
Based on these factual findings, the committee determined that respondent violated Rules 3.4(c), 8.1(b), 8.1(c), 8.4(a), 8.4(c), 8.4(d), and 8.4(g) of the Rules of Professional Conduct.

Count III
9. Respondent contacted representatives of Hormel, the defendant in a lawsuit she filed in 1993, on nine occasions beginning in April 1995 and ending on May 24, 2000, even though Hormel was represented by attorney James Morgan;
10. Mr. Morgan asked respondent not to contact representatives of Hormel in written correspondence dated April 27, 1995, December 6, 1995, July 30, 1997, August 4, 1997, January 21, 1998, and September 18, 1998;
11. All of respondent's direct contacts with representatives of Hormel were attempts on her part to settle the lawsuit, which discussions she should have had with Mr. Morgan;
12. Respondent's client lost the litigation. The ruling in Hormel's favor was affirmed by the U.S. Fifth Circuit Court of Appeals and certiorari was denied by the U.S. Supreme Court;
13. Respondent continued to contact representatives of Hormel after certiorari was denied by the U.S. Supreme Court and after Mr. Morgan filed a complaint with the ODC on December 10, 1998;
14. All of the representatives of Hormel contacted by respondent were management personnel who may have been involved or who supervised individuals who may have been involved in the decision to settle the Schneider lawsuit;
15. None of the representatives of Hormel contacted by respondent had personal knowledge of relevant facts in connection with the lawsuit.
Based on these factual findings, the committee determined that respondent violated Rules 4.2, 8.4(a), and 8.4(d) of the Rules of Professional Conduct. With respect to respondent's contact with the Hormel representatives, the committee noted that these individuals all have managerial responsibility at Hormel and are high-ranking officers of the company who were in a position to possibly effect a settlement of Mr. Schneider's case. Once Mr. Morgan's representation was established, respondent had no legal basis upon which to contact these representatives directly without Mr. Morgan's permission.
The committee rejected respondent's reliance upon Schmidt v. Gregorio, 25,305 (La.App. 2nd Cir. 10/27/93), 705 So.2d 742,[9] *736 to support her assertion that she did nothing improper in contacting Hormel's executives. The committee noted that case concerned the issue of contact with a company's former employees, not present employees, as in the instant matter. However, the Schmidt court referred to Rule 4.2 of the ABA's Model Rules of Professional Conduct and the comments thereunder. The comments list three categories of present corporate employees with whom ex parte contact is prohibited: (a) those who have managerial responsibility on behalf of the corporation, (b) those whose acts or admissions concerning the subject matter of the litigation may be imputed to the corporation, and (c) those whose statements may constitute an admission by the corporation. The committee determined the individuals contacted by respondent in this case fall within the prohibited category (a).

Count IV
16. Respondent hired Carol F. Gallo d/b/a Mid-South Reporting Service to take a deposition in the Hormel suit and failed to pay the entire bill for her services;
17. Respondent owes Carol F. Gallo $430.20 plus court costs.
The committee found no violation of the Rules of Professional Conduct based on these factual findings, opining "that the failure to pay an invoice of a court reporter does not constitute action that is prejudicial to the administration of justice even though Respondent has no justification for not paying the invoice. The Committee believes that to hold otherwise, the Board would become a collection agency for creditors of attorneys."
The committee found that respondent intentionally and knowingly violated her duties to her client, the public, the legal system, and the profession, and that the baseline sanction for her misconduct is disbarment. The committee determined no mitigating factors are present, but that the following aggravating factors are present: dishonest or selfish motive, pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary process, refusal to acknowledge the wrongful nature of the conduct, and substantial experience in the practice of law (admitted 1979). The committee further observed that respondent has no remorse for her actions, that she refuses to accept responsibility for them, and that she refuses, even in a minor way, to acknowledge their wrongful nature. Accordingly, finding no reason to deviate from the baseline sanction, the committee recommended that respondent be disbarred.
The ODC objected to the committee's determination that respondent's failure to pay a court reporter does not constitute a violation of the Rules of Professional Conduct. Respondent filed nothing concerning the committee's recommendation.

Disciplinary Board Recommendation
After reviewing the record of this matter, the disciplinary board found that the hearing committee's factual findings are generally supported by the record, with two exceptions. First, the board noted that there is no indication from the transcript of the immigration hearing that respondent threw the exhibits at the judge or that she was escorted out of the courtroom twice. However, the board agreed that respondent's conduct during the hearing was otherwise contumelious and obnoxious.
*737 Secondly, the board found Mr. Cavanaugh's deposition indicated that he was very familiar with the relevant facts of the lawsuit filed by respondent. Regardless, the board agreed that respondent's repeated attempts to contact Hormel representatives were improper. The board adopted the committee's report in all other respects.
Based upon its de novo review, the board agreed that the committee correctly applied the Rules of Professional Conduct in connection with Counts I through III of the formal charges. With respect to Count IV, the board noted that it is a matter of first impression in Louisiana whether a lawyer's failure to pay a court reporter's bill constitutes conduct prejudicial to the administration of justice. Nevertheless, in the absence of "specific jurisprudence" to support a finding of misconduct,[10] the board agreed that respondent's failure to pay a court reporter does not constitute a violation of Rule 8.4(d), and recommended that Count IV be dismissed.
The board found respondent knowingly and intentionally violated duties owed to her client, the public, the legal system, and the profession. She caused actual or potential injury to her client, Mr. Joseph, by failing to follow his instructions and to correctly advise him on the status of his case, and when she risked an unfavorable outcome by continuing to urge ill-advised motions. She caused actual or potential injury to the legal profession by making false statements to the court, misrepresenting statements of opposing counsel, and by engaging in disruptive behavior. She caused actual or potential injury to the public and to the profession by her failure to cooperate in the investigation of the disciplinary matter, and she caused actual or potential injury to the legal system by contacting representatives of a defendant company when the defendant was represented by counsel. The board concurred in the aggravating factors cited by the hearing committee, and agreed that no mitigating factors are present.
In light of these considerations, the ABA's Standards for Imposing Lawyer Sanctions,[11] and the prior jurisprudence,[12] *738 the board recommended that respondent be disbarred. The board also recommended that respondent be assessed with all costs and expenses of these proceedings, with legal interest to commence running thirty days from the date of finality of the court's judgment until paid.
Neither respondent nor the ODC filed a timely objection in this court to the recommendation of the disciplinary board. However, after the expiration of the time for filing objections under Supreme Court Rule XIX, § 11(G)(1), respondent sought to file a "late" objection. On October 10, 2002, this court issued an order directing respondent and the ODC to submit written briefs, without oral argument, "addressing whether the sanction recommended by the disciplinary board in this case is appropriate." Respondent and the ODC both timely filed briefs in response to the court's order.

DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La. 11/30/94), 646 So.2d 343; Louisiana State Bar Ass'n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. See In re: Caulfield, 96-1401 (La. 11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
Respondent is charged with engaging in misconduct before an immigration judge, communicating with an opposing party represented by counsel, and failing to pay an invoice for court reporting services. We will consider each count in turn.[13]
The first count relates to respondent's conduct in connection with her handling of the immigration matter. Unlike a criminal conviction, the determination of the INS that respondent engaged in unprofessional conduct is not conclusive of her guilt as to those matters. In re: Quaid, 94-1316 *739 (La.11/30/94), 646 So.2d 343; see also Supreme Court Rule XIX, § 19. Nonetheless, there is more than ample evidence in the record to support a finding, under the clear and convincing evidentiary standard, that respondent made knowing false statements to an immigration judge. Respondent willfully made false representations to the court that a motion she filed was unopposed by her adversary, when in fact, counsel had voiced his unequivocal objection to the motion. Respondent also informed the court that her client's Immigrant Visa Petition had been approved by the INS, when in fact, it had not been approved. Such conduct is not only a violation of the rules applicable to practitioners before the INS, but is a violation of the Rules of Professional Conduct.
We also find the record contains sufficient evidence that respondent engaged in disrespectful, disruptive behavior before Judge Zlatow during the August 7, 1997 hearing. Respondent's conduct during that hearing was grossly inappropriate and would not have been tolerated by any judge in any courtroom. Asked in these proceedings to explain her behavior, respondent simply contends that she was zealously representing her client. While we do not deny that attorneys must be vigorous and zealous advocates on behalf of their clients, respondent's conduct during Mr. Joseph's hearing went far beyond such advocacy. Indeed, respondent's excessive zeal could actually have been detrimental to her client's interests; had Judge Zlatow acceded to respondent's demands that he rule immediately on Mr. Joseph's application for adjustment of status, the application would have been denied and Mr. Joseph would have been deported from this country. Respondent's conduct violated the Rules of Professional Conduct.
The second matter involves respondent's communications with executives of the Hormel Foods Corporation. Rule 4.2 of the Rules of Professional Conduct clearly prohibits a lawyer from communicating about the subject of the representation with a person (or an employee or agent of such a person) known to be represented by counsel, unless the lawyer has first obtained the consent of the other lawyer. In the instant case, respondent persistently and repeatedly contacted Hormel's executives in an effort to settle her client's case on favorable terms. Given that Hormel's counsel had instructed respondent on no less than seven occasions not to contact his client, respondent could not possibly have believed that she had counsel's permission to communicate with Hormel directly. While no tangible harm ultimately resulted from respondent's unauthorized communications with an adverse corporate party, we recognize that Rule 4.2 is prophylactic in nature and is designed to preserve the sanctity of the attorney-client relationship. See, e.g., State v. Gilliam, 98-1320 (La. App., 4th Cir. 12/15/99), 748 So.2d 622. Accordingly, there can be no doubt that respondent has engaged in conduct prohibited by the Rules of Professional Conduct.
Finally, the hearing committee and disciplinary board have recommended the dismissal of the charge involving the unpaid invoice for court reporting services. While we do not condone respondent's failure to pay litigation-related expenses she has incurred, we tend to agree with the board that such conduct does not generally constitute a violation of the Rules of Professional Conduct. Furthermore, the ODC has not filed an objection in this court to the board's recommendation. Therefore, we will dismiss Count IV of the formal charges.
Having found evidence of professional misconduct, the sole issue presented for our consideration is the appropriate sanction for respondent's actions. In determining *740 a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass'n v. Reis, 513 So.2d 1173 (La. 1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass'n v. Whittington, 459 So.2d 520 (La.1984).
The ABA's Standards for Imposing Lawyer Sanctions and this court's prior jurisprudence support a baseline sanction of a lengthy suspension or disbarment. The aggravating factors present include a pattern of misconduct, respondent's refusal to acknowledge the wrongful nature of the conduct, and substantial experience in the practice of law. Neither the hearing committee nor the disciplinary board recognized the presence of any mitigating factors, but in its brief to this court, the ODC concedes that respondent has no prior disciplinary record in more than twenty years of practice. In addition, we note the record supports the mitigating factors of the absence of a dishonest or selfish motive and the imposition of other penalties or sanctions, namely respondent's suspension from practice before the Executive Office for Immigration Review and the INS. We believe these mitigating factors outweigh the aggravating factors present.
After carefully reviewing the extensive record in this matter, we conclude the purposes of attorney discipline would best be served by a lengthy suspension, rather than disbarment. Accordingly, we will suspend respondent from the practice of law for three years.

DECREE
Upon review of the findings and recommendation of the hearing committee and the disciplinary board, and considering the record, it is ordered that Kathleen M. Bilbe be suspended from the practice of law in Louisiana for a period of three years. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.
NOTES
[1] Mr. Joseph entered the United States in 1991 as a non-immigrant visitor with authorization to remain in this country for a temporary period not to exceed one year. Because Mr. Joseph had remained in the country beyond that time without authorization from the INS, he was facing deportation to St. Lucia if he did not obtain an adjustment of his immigration status.
[2] The record of this matter includes a transcript of the August 7, 1997 hearing in Mr. Joseph's case.
[3] 8 C.F.R. § 292.3 relates to professional conduct for practitioners before the INS.
[4] We note that in subsequent correspondence to the ODC, respondent suggested that her answer to the petition for attorney discipline was "wrong" and "overly concise in an attempt not to detract from the violations of the Code of Judicial Conduct by Judge Zlatow." Respondent went on to essentially deny the misconduct alleged in the petition for attorney discipline.
[5] In the formal charges, the ODC specifically alleges that following this court's action on November 24, 1998, it issued a second subpoena for respondent's appearance on February 18, 1999; that the subpoena was personally served on respondent on February 5, 1999; and that respondent did not appear as ordered. However, this charge is not supported by the record, as the ODC failed to introduce a copy of the subpoena into evidence and respondent contends that she did not receive it.
[6] Although Mr. Cavanaugh is an attorney, he was not enrolled as counsel of record in the Schneider case. Mr. Morgan was the only attorney of record in the matter.
[7] In November 1995, the jury in the Schneider case returned a verdict dismissing plaintiff's claims and awarding costs to Hormel. This judgment was affirmed on appeal, and the United States Supreme Court denied certiorari in the case in February 1998. Schneider v. Geo. A. Hormel & Co., 125 F.3d 852 (5th Cir.1997), cert. denied, 522 U.S. 1109, 118 S.Ct. 1038, 140 L.Ed.2d 104 (1998).
[8] Ms. Gallo has obtained a judgment against respondent for the balance due. Respondent contends this judgment "is not valid" and was illegally obtained.
[9] Schmidt is a declaratory judgment action arising out of a medical malpractice suit against a hospital. In the course of the litigation, plaintiffs' counsel contacted a number of former employees of the hospital to interview them as potential witnesses in the case. None of these former employees were parties to the suit, and none were represented by counsel. When the hospital's attorney objected, plaintiffs sought a declaratory judgment decreeing that it was not inappropriate for their attorney to contact and interview former hospital employees without the consent of the hospital's attorney. The trial court denied relief, but the court of appeal reversed and held that a lawyer representing a client in a matter adverse to a corporate party that is represented by counsel may, without violating Rule 4.2, communicate about the subject of the representation with an unrepresented former employee of the corporate party without the consent of the corporation's lawyer.
[10] The board distinguished the out-of-state cases cited by the ODC for the proposition that a lawyer's failure to pay litigation-related expenses is a violation of the Rules of Professional Conduct. For example, in In re Reiter, 567 N.W.2d 699 (Minn. 1997), the attorney was disciplined, in part, because he failed to pay for court reporting services; however, the attorney was found to have converted funds he received from his client specifically for the purpose of paying the court reporter. Similarly, in In re Brown, 636 N.E.2d 1249 (Ind. 1994), the attorney was disciplined for failing to personally pay discovery expenses as he had been ordered to do by the court.

The board also rejected the ODC's reliance on In re: Landry, 98-2767 (La. 1/8/99), 728 So.2d 833, which it cited to support its argument that this court has recognized Rule 8.4(d) is an appropriate vehicle for bringing disciplinary action against a lawyer who fails to pay an obligation, even wholly unrelated to the practice of law, such as a child support arrearage. Landry was not based upon Rule 8.4(d), but rather upon an application of Supreme Court Rule XIX, § 19.1, which specifically allows the institution of disciplinary proceedings for non-compliance with a child support order.
[11] The board cited Standard 6.11, which suggests that disbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, submits a false document, or improperly withholds material information, and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding, and Standard 6.31, which suggests that disbarment is generally appropriate when a lawyer improperly communicates with someone in the legal system (other than a witness, judge, or juror) with the intent to influence or affect the outcome of the proceeding, and causes significant or potentially significant interference with the outcome of the legal proceeding.
[12] The board relied upon In re: Pardue, 98-3017 (La.3/26/99), 731 So.2d 224, and In re: Quaid, 94-1316 (La. 11/30/94), 646 So.2d 343. In Pardue, formal charges were filed against the respondent based upon his criminal conviction for filing a false tax return and his direct communications with a claims adjuster in an effort to settle a personal injury claim, without the knowledge or consent of opposing counsel. This court imposed a two-year suspension, primarily based upon the conviction; the ODC had conceded that the Rule 4.2 violation was "relatively minor, and, standing alone, would probably justify no more than a reprimand." 98-3017 at p. 4, fn. 7, 731 So.2d at 227. However, the board determined that respondent's efforts to reach a settlement in the Hormel case were "far more egregious than Pardue's solitary contact with a represented party." Moreover, the board found that respondent's conduct in the immigration matter (which technically was in violation of the Code of Federal Regulations) is "congruent" with Pardue's tax conviction.

In Quaid, the respondent was found to have violated two separate provisions of the Code of Federal Regulations by charging excessive attorney's fees and making false statements of material fact in a social security disability proceeding. He was disbarred for this conduct. The board noted that Quaid's conduct mirrors respondent's violation of the Code of Federal Regulations for misleading an immigration judge, and concluded that by imposing the sanction of disbarment, this court intended to stress "the seriousness of making false statements to a judge."
[13] While we have discussed at length the more serious charges against respondent, the record also demonstrates that she failed to cooperate with the ODC in its investigation.