Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
March 9, 2020

**2020 CO 19**

**No. 19SA93,** *In the Matter of W. Bradley Betterton-Fike*—**Attorney Discipline**—**Conduct Prejudicial to the Administration of Justice.**

In this disciplinary proceeding, a Hearing Board concluded that an attorney violated Colorado Rule of Professional Conduct 8.4(d) by allegedly failing to pay a court reporter and Rule 8.4(b) by physically assaulting his wife. Based on these violations, it imposed a nine-month suspension from the practice of law.

The supreme court considers whether the attorney engaged in conduct "prejudicial to the administration of justice" in violation of Rule 8.4(d). Because the attorney had no legal obligation to pay the court reporter, the supreme court concludes that he did not violate this rule. Accordingly, the supreme court reverses the Board's judgment as to the Rule 8.4(d) violation and remands for the Board to reconsider its sanction in light of this decision.

## The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

---

### 2020 CO 19

---

### Supreme Court Case No. 19SA93

*Original Proceeding in Discipline*

Appeal from the Office of the Presiding Disciplinary Judge 18PDJ43

Honorable William R. Lucero, Presiding Disciplinary Judge

---

### In the Matter of W. Bradley Betterton-Fike

---

### Judgment Reversed in Part and Affirmed in Part

*en banc*

March 9, 2020

---

**Attorneys for Respondent-Appellant:**

Law Office of N. Nora Nye, LLC

N. Nora Nye

    *Denver, Colorado*

**Attorneys for Complainant-Appellee:**

Jessica E. Yates, Attorney Regulation Counsel

Alan C. Obye, Assistant Regulation Counsel

    *Denver, Colorado*

**JUSTICE HOOD** delivered the Opinion of the Court.

¶1 Two incidents of alleged professional misconduct culminated in W. Bradley Betterton-Fike suffering a nine-month suspension of his license to practice law in Colorado. First, a court-reporting firm complained that it had not received long-overdue payment for services it provided at Betterton-Fike's request. Second, and unrelatedly, a jury found him guilty of assaulting his wife.

¶2 The Office of Attorney Regulation Counsel ("OARC") alleged that Betterton-Fike violated Colorado Rule of Professional Conduct 8.4(d) (engaging in conduct prejudicial to the administration of justice) and Rule 8.4(b) (committing a criminal act that reflects adversely on a lawyer's fitness). In a divided opinion, a Disciplinary Hearing Board ("Board") agreed.

¶3 Betterton-Fike appeals the Board's judgment. He contends that the Board majority: (1) misconstrued subsection IV(B) of Chief Justice Directive ("CJD") 05-03; (2) erroneously concluded that he engaged in conduct prejudicial to the administration of justice in violation of Rule 8.4(d); and (3) imposed a sanction that was manifestly excessive and unreasonable.

¶4 We conclude that subsection IV(B) of CJD 05-03 does not control here, but the Board majority correctly interpreted this provision in any event. Still, the Board majority erred by concluding that Betterton-Fike violated Rule 8.4(d). We therefore reverse the Board's judgment as to the Rule 8.4(d) violation and remand for the Board to reconsider its sanction in light of this opinion.

2

# I. Facts and Procedural History

¶5     Based on evidence presented at the disciplinary hearing and the Board's factual findings, the following events gave rise to the two allegations at issue here.[1]

## A. Payment for Court-Reporting Services

¶6     Betterton-Fike contacted Hunter & Geist ("H&G"), a court-reporting firm, in August and September 2016 to arrange court-reporting services for two depositions.  H&G agreed to provide these services without a written contract or any advance payment.  In fulfilling Betterton-Fike's order, H&G prepared the transcripts for both depositions and sent him invoices.[2]  The invoices totaled about $1,960.  H&G requested payment within thirty days.  Because Betterton-Fike's fee agreement required his clients to pay for court-reporting services, he forwarded the invoices to his clients.

---

[1] Betterton-Fike concedes in his reply brief that he "does not challenge the Hearing Board's findings of fact in this appeal."

[2] Betterton-Fike contended at oral argument that he did not receive these invoices and was unaware that he had an outstanding balance with H&G until December 2016 (three months before OARC opened its investigation in March 2017).  But the parties' stipulated exhibits include emails sent from H&G to Betterton-Fike's email address in September 2016 with the invoices attached.  And when asked at the disciplinary hearing whether he received these emails with the attached invoices in September 2016, Betterton-Fike responded that he did.

¶7     Thirty days came and went.  Because H&G didn't receive payment, it sent Betterton-Fike an email, reminding him of the outstanding balance.  But H&G never heard from Betterton-Fike, or his clients, regarding payment.

¶8     Over the next four months, H&G called, left voicemails, and sent Betterton-Fike emails and letters requesting payment.  But it never received any payment or heard from Betterton-Fike.

¶9     When the invoices were about six months old, H&G filed a grievance against Betterton-Fike with OARC.  Betterton-Fike responded to OARC's initial inquiry by explaining that he had billed his clients for H&G's work, and because his clients hadn't paid him, he was unable to pay H&G.

¶10     H&G ultimately filed an action against Betterton-Fike's law firm in small claims court.  Betterton-Fike testified that after H&G filed this action, he contacted his clients regarding the outstanding balance.  He agreed to forego certain fees for his services in order to pay H&G.  When he received payment from his clients, he paid H&G the overdue balance, including interest, in January 2019.  This occurred over two years and three months after he initially received H&G's invoices for its court-reporting services.

## B.  Physical Assault

¶11     Meanwhile, in October 2017, a jury found Betterton-Fike guilty of assault under the Denver Municipal Code for physically assaulting his wife in their home.

4

¶12 According to Betterton-Fike's testimony at the disciplinary hearing, he and his wife had been quarreling on the day of the assault. After they went to bed, their conflict escalated. Ms. Betterton-Fike testified that Betterton-Fike spat in her face, punched her in the arm approximately eleven times, and briefly paused before punching her in the arm at least four more times.

¶13 After the jury found him guilty, the court sentenced him to twelve months of supervised probation, which included a domestic violence evaluation and treatment. At the time of the disciplinary hearing, Betterton-Fike had successfully completed his probation.

## C. Disciplinary Proceeding

¶14 OARC filed a complaint with the Presiding Disciplinary Judge ("PDJ"), alleging that Betterton-Fike violated Rule 8.4(d) (engaging in conduct prejudicial to the administration of justice) and Rule 8.4(b) (committing a criminal act that reflects adversely on a lawyer's fitness).[3]

¶15 OARC moved for summary judgment, which the PDJ granted in part. Because it was undisputed that Betterton-Fike had been convicted of assault, the PDJ concluded that Betterton-Fike had violated Rule 8.4(b) as a matter of law. But

---

[3] OARC also alleged that Betterton-Fike violated Rule 3.4(c) for failing to notify it of his assault conviction. But it later filed a motion requesting the PDJ to dismiss this claim with prejudice, which the PDJ granted.

regarding his alleged Rule 8.4(d) violation, the PDJ reasoned that he was "not aware of any Colorado authority holding that a lawyer's failure to pay a court reporter *per se* amounts to a violation." He concluded that a hearing board should determine whether Betterton-Fike violated this rule.

¶16 A disciplinary hearing followed.[4] The Board heard testimony from an H&G employee responsible for billing and collections, Betterton-Fike's wife, Betterton-Fike's domestic-violence-treatment provider, and Betterton-Fike himself. During his testimony, Betterton-Fike emphasized that his clients were ultimately responsible for paying H&G. He also denied hitting his wife.

¶17 After the hearing, a majority of the Board concluded that Betterton-Fike engaged in conduct prejudicial to the administration of justice in violation of Rule 8.4(d) because he didn't timely pay H&G. One Board member disagreed and dissented in part. She reasoned that Betterton-Fike was neither personally liable nor had a "*per se* duty" to be the financial guarantor for his client's court-reporting expenses. She also maintained that the Board majority's conclusion conflicted

---

[4] Hearings on complaints seeking disciplinary action are conducted by a hearing board, which consists of the PDJ and two additional members. C.R.C.P. 251.18(b)(1). These additional members are attorneys licensed to practice law in Colorado or members of the public. C.R.C.P. 251.17(a)(1).

with the plain language of CJD 05-03 and emphasized that H&G chose to provide its services without a written contract.

¶18 The Board imposed a nine-month suspension with the requirement of formal reinstatement proceedings. There was no disagreement among the Board regarding this sanction.

¶19 Following the Board's decision, Betterton-Fike filed a motion for reconsideration, which the Board denied. This appeal followed.

## II. Analysis

¶20 We first consider how the Board majority construed CJD 05-03. After concluding that the CJD doesn't control here, we address whether the Board majority erroneously concluded that Betterton-Fike engaged in conduct prejudicial to the administration of justice. Because it did, we proceed to consider the Board majority's sanction. Because it is unclear whether the Board majority relied on Betterton-Fike's Rule 8.4(d) violation in imposing a nine-month suspension, we reverse the Board's judgment as to the Rule 8.4(d) violation and remand for the Board to reconsider its sanction.

### A. The Board Majority Properly Construed CJD 05-03

¶21 Betterton-Fike first contends that subsection IV(B) of CJD 05-03 expressly requires clients to pay privately hired court reporters. OARC counters that CJD

7

05-03 is merely "an expression of the [Colorado Supreme] Court's administrative policy." We agree with OARC.

¶22 A disciplinary hearing board's interpretation of a CJD is a question of law that we review de novo. *See People v. Hoskins*, 2014 CO 70, ¶ 17, 333 P.3d 828, 834; *In re Pautler*, 47 P.3d 1175, 1179 (Colo. 2002).

¶23 As an initial matter, CJDs are "policy statements promulgated pursuant to this court's general power to administer the Colorado judicial system." *Bye v. Dist. Court*, 701 P.2d 56, 59 (Colo. 1985); *see also Office of the State Court Adm'r v. Background Info. Servs., Inc.*, 994 P.2d 420, 431 (Colo. 1999) ("The Chief Justice Directive represents an expression of Judicial Branch policy, to be given full force and effect in matters of *court administration*." (emphasis added)). They are vehicles by which the Chief Justice implements his or her administrative authority. *See Background Info. Servs.*, 994 P.2d at 430–31. Thus, CJD 05-03 does not control here.

¶24 Even so, the Board majority properly construed subsection IV(B) as describing the "allocation of responsibility for paying court reporter costs *as between the Colorado Judicial Department and a client or client representative*, not as between a client and a client's attorney."

¶25 CJD 05-03 generally concerns court reporters "employed by the Colorado Judicial Branch." Chief Justice Directive 05-03, Management Plan for Court Reporting and Recording Services, Background (amended Jan. 2018).

8

Accordingly, it "does not apply to court reporters hired by a litigant to provide services as an independent contractor in a civil case," like H&G, "unless explicitly stated." *Id.*

¶26 Section IV expressly addresses "Court Reporters Hired by Litigants in Civil Cases." And subsection IV(A) notes that "[c]ourt reporters hired by a party in a civil case are not Colorado Judicial [Branch] employees." *Id.* at § IV(A). Accordingly, subsection IV(B) clarifies that "[t]he party(ies)" (as opposed to the Colorado Judicial Branch) "are responsible for the court reporter's page rate and for paying any associated fees based on the negotiated page rate." *Id.* at § IV(B). Conversely, subsection IV(E) clarifies that when a court orders transcripts "from a privately retained court reporter," the transcripts "will be paid for by the Colorado Judicial [Branch]." *Id.* at § IV(E). Thus, read in context, subsection IV(B) merely indicates that when the state plays no role in hiring a private court reporter, the state is not responsible for paying the court reporter. Nothing in section IV's plain language dictates that a client, as opposed to his or her attorney, is responsible for payment.

¶27 We therefore conclude that the Board majority properly construed subsection IV(B).

## B. Betterton-Fike's Conduct Did Not Violate Rule 8.4(d)

¶28 Betterton-Fike next challenges the Board majority's conclusion that he violated Rule 8.4(d) by failing to pay H&G. He emphasizes that he was under no legal obligation to pay for H&G's services. But OARC urges us to affirm based on our precedent. We agree with Betterton-Fike.

¶29 Under Rule 8.4(d), it is professional misconduct for an attorney to "engage in conduct that is prejudicial to the administration of justice." The Board majority's determination that Betterton-Fike violated this rule is a conclusion of law. We review conclusions of law de novo. C.R.C.P. 251.27(b); *In re Haines*, 177 P.3d 1239, 1245 (Colo. 2008).

¶30 We are not the first court to consider whether an attorney commits professional misconduct by failing to pay for court-reporting services. Some jurisdictions have concluded, albeit without much analysis, that such conduct is prejudicial to the administration of justice. *See, e.g.*, *In re Disciplinary Action Against Haugen*, 543 N.W.2d 372, 375 (Minn. 1996) (concluding that an attorney's "failure to timely pay court reporter fees was also misconduct" because the "failure to pay debts for goods or services used in an attorney's law practice" reflects adversely on the attorney's fitness to practice law); *In re Thornton*, 538 S.E.2d 4, 5 (S.C. 2000) (concluding that an attorney engaged in conduct prejudicial to the administration of justice by failing to timely pay court-reporter fees).

10

¶31 Other jurisdictions have concluded that such conduct generally does not violate the Rules of Professional Conduct. *See, e.g., Fla. Bar v. Cook*, 567 So. 2d 1379, 1380 (Fla. 1990) (reversing referee's finding that an attorney engaged in professional misconduct by failing to pay a court reporter); *In re Bilbe*, 841 So. 2d 729, 739 (La. 2003) (reasoning that while it did not condone the attorney's failure to pay litigation-related expenses, an attorney's failure to pay a court reporter "does not generally constitute a violation of the Rules of Professional Conduct"). *But see In re Appeal of Decision of the Disciplinary Bd. No. 16-PDB-049*, 208 So. 3d 370, 370 (La. 2017) (noting that *Bilbe* "does not stand for the blanket proposition that an attorney's failure to pay litigation-related expenses can never constitute conduct prejudicial to the administration of justice").

¶32 Although this court has never considered this issue on the merits, it has disciplined attorneys for failing to pay court reporters under a previous iteration of Rule 8.4(d). *People v. Whitaker*, 814 P.2d 812, 814–16 (Colo. 1991) (disciplining an attorney following the hearing board's conclusion that she "engag[ed] in conduct prejudicial to the administration of justice" by failing to pay a court reporter despite repeated promises to pay (citation omitted)); *People v. Goens*, 803 P.2d 480, 481–82 (Colo. 1990) (affirming the hearing board's conclusion that an attorney who had indicated that "his client would pay the costs" engaged in "conduct prejudicial to the administration of justice" by failing to pay a Division of Labor

11

court reporter despite "many phone messages and a letter inquiring about payment" (citation omitted)). Perhaps understandably, the Board majority relied on this precedent in concluding that Betterton-Fike violated Rule 8.4(d).

¶33 But *Whitaker* and *Goens* are distinguishable. In those cases, neither attorney responded to the complaints made against them. *Whitaker*, 814 P.2d at 813; *Goens*, 803 P.2d at 481. Accordingly, the allegations that the attorneys engaged in conduct prejudicial to the administration of justice were deemed admitted. C.R.C.P. 251.15(b); *Whitaker*, 814 P.2d at 813; *Goens*, 803 P.2d at 481. And in *Whitaker*, we emphasized the attorney's dishonesty in failing to pay despite repeated promises to do so. 814 P.2d at 815. Because Betterton-Fike neither admitted to a Rule 8.4(d) violation nor promised that he would pay H&G, these cases are inapposite.

¶34 Turning to the facts of this case, Betterton-Fike had no legal obligation to pay H&G for its court-reporting services. He never entered into a written contract with H&G that created an express obligation to pay, and his fee agreement specified that his clients were responsible for payment. *Cf. People v. Mannix*, 936 P.2d 1285, 1286, 1288 (Colo. 1997) (disciplining an attorney following a hearing board's conclusion that he violated Rule 8.4(d) by failing to pay for a transcript despite promising his client he would pay). The record is also devoid of evidence indicating that Betterton-Fike expressly agreed or otherwise indicated to H&G that he would pay for its services. True, H&G's employee testified that he understood

12

Betterton-Fike's ordering court-reporting services to create a verbal contract. But to the extent there was a verbal contract, Betterton-Fike was not personally liable for payment because he acted solely for his clients when he ordered H&G's services and disclosed this fact to H&G. *Elder v. Eastwood*, 216 P. 542, 544 (Colo. 1923) ("We think the law is well settled, as a general proposition, that an attorney does not become personally liable, in the absence of an express promise, for expenses of printing briefs, abstracts, and other work of like character, done at the instance of the attorney, where he acts solely for his clients.").

¶35    Moreover, attorneys are not financial guarantors for their clients' litigation expenses.[5] Imposing an ethical obligation on attorneys to pay court reporters whenever their clients do not would be tantamount to requiring attorneys to serve as financial guarantors. Placing attorneys in the position of being de facto guarantors would be troubling for several reasons. First, it would encourage attorneys to only represent wealthy clients, hampering access to justice for parties with low or moderate incomes. Second, it could impede effective and efficient litigation by discouraging attorneys from taking depositions during pretrial

---

[5] While Rule 1.8(e)(1) *permits* attorneys to advance litigation expenses, which include the costs of obtaining evidence, the Colorado Rules of Professional Conduct do not *require* attorneys to advance these expenses when their clients do not pay.

discovery. *See Hawkins v. Dist. Court*, 638 P.2d 1372, 1375 (Colo. 1982) ("The purposes of pretrial discovery include the elimination of surprise at trial, the discovery of relevant evidence, the simplification of issues, and the promotion of expeditious settlement of cases."). Third, imposing such an ethical obligation on attorneys would encourage court reporters to rely on OARC as a collection agency. *See Bilbe*, 841 So. 2d at 736 (noting the hearing committee's concern that the disciplinary board "would become a collection agency for creditors of attorneys"). Facilitating debt collection is not OARC's job. *See* Colo. RPC 4.5 cmt. 1 (recognizing the disciplinary process is "designed for the protection of society as a whole," while the civil process is "designed for the settlement of disputes between parties"); *Fla. Bar v. Nesmith*, 642 So. 2d 1357, 1358 (Fla. 1994) (noting "the Bar should not be used as a collection agency"); *Cook*, 567 So. 2d at 1380 (noting the contention that a dispute over a personal debt is "more appropriately resolved through a civil action" than a disciplinary proceeding).

¶36 That said, we recognize that *Whitaker* and *Goens* suggest that an attorney's failure to pay a court reporter is an issue of professional responsibility. We therefore don't blame court-reporting firms such as H&G for turning to OARC, or threatening to do so, when they aren't paid for their services. But we don't want to incentivize court reporters to threaten grievances to coerce payment from attorneys. Such conduct is disturbingly akin to threatening disciplinary charges

14

to obtain an advantage in a prospective civil matter, which is prohibited by the Colorado Rules of Professional Conduct. Colo. RPC 4.5(a); *see also id.* at cmt. 1 (defining civil matter to include a "potential controversy over rights and duties of two or more persons under the law whether or not an action has been commenced"). Although this rule is not binding on court reporters, rattling the saber of discipline to settle a potential civil dispute nevertheless subverts the civil process. *Id.* at cmt. 2; *see also id.* (noting "the improper use of . . . [the] disciplinary process tends to diminish public confidence in our legal system").

¶37    We don't mean to suggest that court reporters should never notify OARC of ethical concerns that arise when they aren't paid for their services. Failing to pay for court-reporting services coupled with other circumstances could amount to a Rule 8.4(d) violation. And in this case, it is disturbing that Betterton-Fike waited over two years to settle his clients' account and failed to facilitate any payment from his clients during this time. But where, as here, there is no evidence that the attorney had any legal obligation to pay, an attorney's alleged failure to pay a court reporter does not constitute conduct prejudicial to the administration of justice.[6]

---

[6] Betterton-Fike also contends that the Board majority erroneously based its decision on the "potential" for his actions to prejudice the administration of justice writ large, rather than on whether his actions had an "actual" prejudicial effect on his clients, their cases, or H&G's business practices. Certainly, an attorney's

15

¶38     Accordingly, the Board majority erred by concluding that Betterton-Fike violated Rule 8.4(d).

## C. Sanction

¶39     Betterton-Fike last contends that his nine-month suspension is manifestly excessive and unreasonable.  Although we conclude that Betterton-Fike did not violate Rule 8.4(d), the extent to which the Board majority considered this violation in support of imposing a nine-month suspension is unclear.  In evaluating aggravating factors, it noted that Betterton-Fike had substantial experience in the practice of law.  Because Betterton-Fike "should have understood his obligation to pay for court reporting invoices," it "applie[d] this factor in aggravation."  But it accorded this factor relatively little weight because the factor only addressed the Rule 8.4(d) violation.  The Board majority also considered this violation "in assigning a sanction."  Yet, it believed that this violation "should not measurably increase the level of discipline imposed here" because "[t]he gravamen of this case is [Betterton-Fike's] physical assault on his wife, not his failure to pay for

---

conduct must prejudice the administration of justice to violate Rule 8.4(d).  But because we conclude that a legal obligation to pay is necessary for an attorney to violate Rule 8.4(d) for failing to pay a court reporter and that Betterton-Fike did not have a legal obligation to pay H&G, we need not, and therefore do not, resolve whether potential prejudice to the administration of justice would suffice in this context.

16

transcripts he ordered." Due to this ambiguity in the Board majority's order, we remand this case for the Board to reconsider its sanction, to the extent the sanction was influenced by its conclusion that Betterton-Fike violated Rule 8.4(d).

### III. Conclusion

¶40 We reverse the Board's judgment as to Betterton-Fike's Rule 8.4(d) violation and remand for the Board to reconsider its sanction in light of this opinion.