ATTORNEY DISCIPLINARY PROCEEDINGS.
LPER CURIAM.
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Hany A. Zohdy, an attorney licensed to practice law in Louisiana.[1]
UNDERLYING FACTS
These proceedings stem from respondent’s conduct in two nationwide class action cases, the Price case (Counts 1(A) and (B)) and the Woodward case (Counts 1(C), (D), (E), and (F)).

Count 1(A)

In 1993, a group of plaintiffs filed suit against Ciba-Geigy Corporation in Louisiana state court. Hurley Henson, et al. v. Ciba-Geigy Corp., et al, No. 43,620 on the docket of the 18th Judicial District Court for the Parish of Iberville. The suit alleged that the plaintiffs were injured as a result of occupational exposure to chemicals at Ciba-Geigy’s plant in St. Gabriel, Louisiana, including Galecron, the Ltrade name for a commercial agricultural pesticide (chemical name chlordimeform) manufactured by Ciba-Geigy. The Louisiana court stayed Henson when respondent and his co-counsel filed an intervention in Russell Price, et al. v. Ciba-Geigy Corp., et al., a similar class action that was pending in the United States District Court for the Southern District of Alabama.
Respondent’s intervention on behalf of the Henson Group was partially responsible for certain enhancements to the terms of the settlement agreement in Price. In 1994, the federal court approved a $75 million settlement in Price that provided medical monitoring and other compensation to class members. The settlement agreement, to which respondent was a signatory, contained a stipulation requiring that the Henson action, including without limitation “any and all claims” against the defendants, be dismissed with prejudice as of the date of the approval of the settlement.[2] In 1998, the Louisiana court con *1279 ducted a hearing to determine why the Henson action should not be dismissed in light of the stipulation. During the hearing, respondent told the court that the Price settlement required dismissal of only some of the claims raised in Henson, specifically those concerning chlordimeform. This assertion was patently incorrect, as the settlement stipulation named the entire Henson action by docket number and said nothing about dismissing only certain claims. Nevertheless, relying upon the misrepresentation, the Louisiana court invited respondent to file an amended petition in Henson to raise claims involving other |3chemicals handled by Ciba-Geigy. Respondent filed the amended petition in September 1998.
In response to the amendment, the defendants in Price removed the Henson case to a federal court in Louisiana, which granted a transfer to the Southern District of Alabama. The defendants and class counsel then filed motions to enforce the settlement agreement and for sanctions against respondent. At the hearing on the motions, respondent argued that the settlement did not require the dismissal of all claims in Henson and pointed out that class counsel was the party responsible for obtaining the dismissal. The district court rejected these arguments, and on November 24, 1998, dismissed Henson as barred by the Price settlement. Moreover, the district court ordered respondent to pay $27,183.79 to the defendants for the legal fees incurred in enforcing the Price settlement:
It is clear to this Court that, under the terms of the Stipulation of Settlement in Price, et al. v. Ciba-Geigy, the plaintiffs in Henson, referred to as the “Henson Group,” were required to dismiss the state court action with prejudice as of the approval date of the Stipulation of Settlement. Rather than obey this Court’s clear and unambiguous order, the “Henson Group” and their counsel, Hany A. Zohdy, attempted to thwart this Court’s jurisdiction by filing an amended complaint in Henson in which they put forward claims which they say do not fall within the ambit of the Stipulation of Settlement.
However, the Stipulation of Settlement clearly states that any and all claims in the Related Case (Henson) shall be dismissed with prejudice. This Court can discern no subtlety in its Order and therefore, the Court finds that Hany A. Zohdy has acted in a manner calculated to offend this Court and in complete defiance of the Court’s order, [emphasis in original]
Respondent appealed the district court’s judgment. On August 14, 2001, the United States Court of Appeals for the Eleventh Circuit affirmed the order of sanctions against respondent, stating in pertinent part:
|4Zohdy argues [that] the settlement stipulation did not require dismissal of claims relating to Atrazine, and he therefore did not act contrary to the settlement. This contention is merit-less; the stipulation language quoted above explicitly requires dismissal of all claims in the Henson action, which the stipulation identifies by docket number. Finally, Zohdy asserts that he had no obligation to dismiss the Henson action *1280 because the settlement stipulation puts that onus on “class counsel,” who do not include him. Perhaps that is so, but the district court sanctioned Zohdy, a signatory of the stipulation of settlement, for his efforts to undermine the settlement by preventing class counsel from discharging their duties to secure Henson’s dismissal. Whether or not Zohdy was specifically responsible for getting Henson dismissed, it was within the court’s power to effectuate its orders to punish Zohdy for interfering with the settlement’s implementation, [citations omitted; emphasis in original]
Henson v. Ciba-Geigy Corp., 261 F.3d 1065, 1068 (11th Cir.2001), cert. denied, 534 U.S. 1134, 122 S.Ct. 1079, 151 L.Ed.2d 979 (2002).

Count 1(B)

The class settlement in Price covered bladder cancer and certain carcinomas of the urinary collecting system, which was specifically defined as “primary urothelial carcinoma of the urinary collecting system, i.e., renal pelvis, ureter, bladder and urethra.” In June 1996, respondent signed and submitted to the settlement administrator a claims form in which he stated under penalty of perjury that Lionel Millet was diagnosed with bladder cancer and died incident to a primary carcinoma of the urinary collecting system. However, the decedent’s death certificate, autopsy report, and other medical records established that he died of stomach cancer, which was not a compensable medical condition.
| ^According to the autopsy report of James A. Freeman, M.D., the Iberville Parish coroner, Mr. Millet “was found to have a gastric adenocarcinoma which had spread throughout the abdomen and had metastased to liver, adrenals, kidneys, lungs, and hilar lymph nodes. Such a pattern of spread is a common biologic behavior of adenocarcinoma of the stomach.” Dr. Freeman died sometime in 1996, but respondent claimed that prior to his death, Dr. Freeman told another lawyer that Mr. Millet had bladder cancer and died as a result of exposure to ehlordimeform. This hearsay statement led respondent to file the claims form attesting that Mr. Millet had bladder cancer. Furthermore, respondent believed that the autopsy report was inaccurate because Mr. Millet’s bladder was never autopsied, and that the presence of cancer in the kidney was sufficient to constitute cancer of the bladder.[3]
On November 16, 1998, Magistrate Judge William E. Cassady of the Southern District of Alabama concluded that respondent’s representations that Lionel Millet *1281 had bladder cancer and died incident to certain carcinomas of the urinary collecting system “were not only unsupported by any medical evidence or admissible medical opinion but were, in fact, directly contradicted by all medical evidence.”
| sCount 1(C)
The class action in Jack H. Woodward, et al. v. NOR-AM Chemical Co., No. 94-0780 on the docket of the U.S. District Court for the Southern District of Alabama, was brought by persons alleging injury stemming from occupational exposure to Fundal, the trade name for a commercial agricultural pesticide (chemical name chlordimeform) manufactured by NOR-AM Chemical Company at a facility in McIntosh, Alabama.[4] On December 4, 1995, respondent and another Louisiana attorney, Joe Thompson, filed an intervention and objection to the class settlement in Woodiuard on behalf of Robin Millet and others, known as the “Millet Group.”[5] The members of the Millet Group alleged that they were exposed to chlordimeform through contact with family members who were occupationally exposed to the chemical. The Millet Group sought to participate in the Woodward settlement or to be certified as a subclass.
On February 23, 1996, Magistrate Judge Cassady found that the Millet Group failed to establish its right to intervene because the Woodward class was limited to persons who were exposed to Fundal in an occupational setting. Accordingly, Magistrate Judge Cassady recommended that the motion for intervention be denied.
On May 16, 1996, the district court entered an order adopting the Magistrate Judge’s report and recommendation and denying the Millet Group’s intervention and objections. On May 23, 1996, the district court approved a $42 million settlement inj¿Woodward, 1996 WL 1063670 that provided medical monitoring and other compensation to class members.
On June 21, 1996, the Millet Group filed its notice of appeal to the Eleventh Circuit, and concurrently therewith, filed a motion to proceed on appeal in forma pauperis[6] Both of these pleadings were signed by respondent over the names of his co-counsel. On July 18, 1996, the district court entered an order granting leave to proceed on appeal informa pauperis. On Septem *1282 ber 30, 1996, the Eleventh Circuit dismissed the Millet Group’s appeal for lack of jurisdiction.[7]

Count 1(D)

Although the Millet intervention was unsuccessful, respondent nonetheless sought an award of attorney’s fees and objected to the fee requests submitted by other counsel of record. On July 11, 1996, Magistrate Judge Cassady held a hearing to address the issues raised in the various fee petitions and responses. Respondent appeared at the hearing and withdrew his petition for attorney’s fees as well as his objection to the fee requests of other counsel. Therefore, when Magistrate Judge Cassady issued his report and recommendation on October 11, 1996, he recommended that respondent’s petition for fees be denied in its entirety. Respondent nevertheless filed an objection to Magistrate Judge Cassady’s report and claimed that he was entitled to a fee on behalf of the Millet Group. On December 5, 1996, the | ^district court ruled that as a non-party to the Woodward action, the Millet Group lacked standing to object to the report prepared by the Magistrate Judge.
On January 6, 1997, the Millet Group filed its notice of appeal to the Eleventh Circuit. This pleading was signed by respondent. In orders dated April 30, 1997 and July 16, 1997, the Eleventh Circuit dismissed the appeal as “clearly frivolous” and assessed attorney’s fees against respondent in the amount of $2,000.

Count 1(E)

In November 1996, class counsel filed a motion for sanctions against respondent and his co-counsel, asserting that respondent’s numerous frivolous filings delayed the funding of the Woodward settlement to the detriment of the class members.[8] Counsel for other parties in the action subsequently joined the motion. Respondent opposed the motions for sanctions, arguing that he had not pursued any improper claims and was simply trying to represent his clients to the best of his ability.
In August 1997, Magistrate Judge Cas-sady conducted a three-day evidentiary hearing on the motions for sanctions. In a 69-page report dated November 16, 1998, the Magistrate Judge concluded that the evidence presented at the hearing “overwhelmingly paints a picture of bad-faith conduct in this case.” The Magistrate Judge determined that respondent and his co-counsel should never have filed the motion to intervene and objections to the Woodward class settlement on behalf of the Millet Group because there was no good faith factual basis upon which to do so. Magistrate Judge Cassady further concluded that respondent and his co-counsel | flraised these frivolous arguments in an effort to delay the Woodward settlement in hopes of obtaining an attorney’s fee:
All of the purported objectors/interve-nors were allegedly exposed to the chemical ehlordimeform through contact with someone who worked at the Ciba-Geigy facility at St. Gabriel, Louisiana and Zohdy admitted at the evidentiary hearing that he had no evidence that FUNDAL was formulated or manufactured at that plant and *1283 therefore, without some investigation and a good-faith determination that FUNDAL was manufactured at that plant, the four attorneys in this case who filed the memorandum in support of the motion to intervene/object could not in good-faith move to intervene and/or file objections. Of course, no investigation was made in this case[9] and therefore, the undersigned concludes that the four attorneys representing the Millet Group of intervenors/objectors recklessly raised a frivolous argument in order to delay and disrupt the settlement in hopes of procuring attorney’s fees. Every pleading filed after the frivolous intervention motion/objections only serves to magnify the bad faith and disruption evidenced in this case.
Based on this reasoning, Magistrate Judge Cassady recommended that sanctions in the amount of $19,200 be imposed against respondent and his co-counsel. Of the total sum, the Magistrate Judge concluded that respondent should be ordered to pay $14,400, finding respondent was “75% at fault for filing the frivolous | mobjections/intervention.” The Magistrate Judge further recommended that respondent’s pro hac vice admission in the Southern District of Alabama be revoked.
On January 26, 1999, the district court adopted the recommendation of Magistrate Judge Cassady. Respondent appealed the district court’s judgment, but on May 16, 2000, the Eleventh Circuit affirmed.

Count 1(F)

In preparation for the sanctions hearing subject of Count 1(E) of the formal charges, Linda Harang, counsel for three Woodward class representatives, noticed the deposition of respondent’s client, Robin Millet. Accompanying the deposition subpoena for Mrs. Millet was a subpoena duces tecum for the production of certain records, including financial records relating to her pauper claim. As Mrs. Millet was a non-party witness who resided within the geographic jurisdiction of the U.S. District Court for the Middle District of Louisiana, the subpoena and subpoena duces tecum were issued under the caption and authority of that court and the U.S. District Court for the Southern District of Alabama.
On February 13, 1997, the day before Mrs. Millet’s deposition was scheduled to commence, respondent filed a motion to quash the deposition subpoena in both the Middle District of Louisiana and in the Southern District of Alabama. Respondent also sought a protective order staying discovery. Magistrate Judge Cassady conducted oral argument on the motions on March 11, 1997, and thereafter ordered that Mrs. Millet’s deposition go forward, subject to any further instructions of the U.S. District Court for the Middle District of Louisiana. On April 16, 1997, Magis *1284 trate Judge Christine Noland of the Middle District of Louisiana denied | t respondent’s motion to quash the deposition subpoena and declined to issue a protective order staying discovery.
Following the issuance of Magistrate Judge Noland’s order, Mrs. Millet’s deposition was re-noticed for April 18, 1997. During the deposition, respondent stated on the record that he had not brought the documents responsive to the subpoena duces tecum. Furthermore, respondent terminated the deposition prior to the completion of questioning, falsely claiming the deposition had been limited to two hours by Magistrate Judge Cassady. As a result, Ms. Harang was forced to file motions to compel the production of documents and to complete Mrs. Millet’s deposition, as well as a motion seeking sanctions against respondent. On May 22, 1997, Magistrate Judge Noland granted the motions and sanctioned respondent $1,000 for his conduct, which she characterized as -“outrageous.”
Respondent filed an objection to Magistrate Judge Noland’s order. On December 5, 1997, the district court affirmed the order imposing sanctions against respondent. On January 14, 1998, the district court refused respondent’s motion for reconsideration of the ruling.
By order dated March 27, 1998, Magistrate Judge Noland awarded Ms. Harang the sum of $6,658 in costs and expenses (attorney’s fees of $6,112.50 and $545.50 in costs) incurred as a result of having to conduct a second deposition of Mrs. Millet. Respondent filed an objection to Magistrate Judge Noland’s order. On May 14, 1998, Chief Judge John V. Parker of the U.S. District Court for the Middle District of Louisiana affirmed the award, stating, “This appeal and objections filed by Zohdy is yet another blatant and frivolous attempt by Zohdy to circumvent the decisions by the court and avoid paying the costs to which Linda S. Harang and the Woodward class representatives are clearly entitled. The court will not entertain such frivolity.”
|1KOn May 26, 1998, respondent noticed his intent to appeal the district court’s judgment. On August 10, 1998, the United States Court of Appeals for the Fifth Circuit dismissed the appeal as frivolous. Respondent was sanctioned under 28 U.S.C. § 1927 and Rules 38 and 39 of the Federal Rules of Appellate Procedure and ordered to pay “double the cost of this appeal and Appellees’ reasonable costs in defending it.”
DISCIPLINARY PROCEEDINGS

Formal Charges

In August 1997, Woodward class counsel Timothy Eble filed a complaint against respondent with the ODC. In December 1997, Linda Harang filed a similar complaint. Following an investigation, the ODC filed formal charges against respondent on May 24, 1999,[10] alleging that his conduct in the Price and Woodward matters constituted a violation of Rules 1.1(a) (failure to provide competent representation to a client), 3.1 (meritorious claims and contentions), 3.2 (failure to make reasonable efforts to expedite litigation), 3.3 (candor toward the tribunal), 3.4(a) (unlawfully obstructing another party’s access to evidence), 3.4(c) (knowing disobedience of an obligation under the rules of a tribunal), 3.4(d) (failing to make a reasonably diligent effort to comply with a legally proper discovery request by an opposing party), 3.4(e) (in trial, alluding to a matter that the lawyer does not reasonably believe is relevant or that will not be supported by ad *1285 missible evidence), 3.5(c) (engaging in conduct intended to disrupt a tribunal), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (engaging in conduct prejudicial to the | ^administration of justice) of the Rules of Professional Conduct. The formal charges further allege that respondent engaged in conduct violating the rules of professional conduct of another jurisdiction, in violation of Supreme Court Rule XIX, § 9(b). Respondent answered the formal charges and generally denied any violation of the Rules of Professional Conduct.

Formal Hearing

After a number of continuances and delays related to procedural matters, a hearing was conducted by the hearing committee in October 2002. The ODC presented the testimony of attorneys Timothy Eble, Linda Harang, and Henry Alsobrook, each of whom was involved in the Price and/or Woodward class actions. Respondent testified on his own behalf and on cross-examination by the ODC. He also called several character witnesses to testify before the committee.[11]

Heating Committee Recommendation

Based on the evidence presented at the hearing, the hearing committee made factual findings, including the following:
1. At the time respondent was involved in the Price and Woodward class actions, he had been practicing only three years in Louisiana.[12]
2. Respondent’s law practice was mostly limited to pro bono work in Baton Rouge, and prior to becoming involved in the class actions, he had no experience in complex litigation.
|u3. Respondent became involved in the litigation through relationships he had developed when he worked as a security guard at Ciba-Geigy, and thus he was a member of the class in Price.
4. Respondent and another attorney (also a former security guard at Ciba-Geigy and with no experience in complex litigation) associated • themselves with other attorneys who had more experience than they did, but not necessarily in toxic tort class actions.
5. Respondent took it upon himself to intervene in Woodward after the case was settled.
6. Respondent’s conduct resulted in sanctions being imposed against him, including the loss of his pro hac vice status in the Southern District of Alabama, fines, and assessments of costs.
Based on these factual findings, the committee determined that respondent violated Rules 1.1(a) (because he was not competent by training and experience to represent his clients in the class action lawsuits), 3.1 (because he obstructed and inhibited a complex class action suit without any basis for doing so), 3.2 and 3.5(c) (because rather than expediting litigation, respondent’s actions inhibited the already settled litigation), and 3.3, 3.4(c), and 3.4(e) of the Rules of Professional Conduct (because he misrepresented the medical condition of Lionel Millet and misrepresented Robin Millet’s qualification for proceeding as a pauper). The *1286 committee also found that respondent violated Rule 8.4 and Supreme Court Rule XIX, § 9(b) by violating the Rules of Professional Conduct and the orders of the federal courts.
The committee rejected respondent’s defense that he was representing his clients zealously, finding that his actions displayed a lack of knowledge, training, and experience in the substantive and procedural law applicable to class actions. Though | ^respondent may have been a zealous advocate for the clients who were his former co-workers, his conduct shows that the potential fees to be earned displaced the interest of his clients and became the primary motivating factor in his actions. Furthermore, respondent’s efforts produced no benefit for his clients and resulted in the delay of the settlement of the class actions.
Under these circumstances, the committee recommended that respondent be suspended from the practice of law for one year, or until he complies with the conditions specified in the recommendation,[13] whichever is longer.
Both respondent and the ODC filed objections to the report and recommendation of the hearing committee.

Disciplinary Board Recommendation

The disciplinary board adopted the hearing committee’s factual findings and made additional factual findings relating to respondent’s conduct in the underlying litigation. The board found that the volumes of documentary evidence and the testimony adduced at the three-day disciplinary hearing clearly show that respondent violated the Rules of Professional Conduct as charged in the formal charges. In the Price matter, respondent signed a settlement stipulation that clearly required the dismissal of the Henson case in its entirety. Nevertheless, respondent chose to | ifidisregard the agreement and misled the court in an attempt to advance the claims of his clients, in violation of Rules 3.1 and 3.3. Had respondent complied with the settlement agreement and court order, the matter would have been quickly and simply resolved. Instead, counsel and the courts were stifled by respondent’s inappropriate and frivolous filings which unnecessarily delayed the resolution of the matter, in violation of Rules 1.1(a), 3.2, 3.5(c), and 8.4(d). In Woodward, respondent violated Rules 1.1(a), 3.1, 3.3, and 3.4(e) by attempting to intervene on behalf of the Millet Group with no basis for doing so and by misrepresenting the cause of Mr. Millet’s death and the financial status of the Millet Group relative to the pauper motion. Respondent’s filing of unwarranted and unsupportable petitions, motions, and appeals violated Rules 3.2, 3.4(c), 3.5, 8.4(c), and 8.4(d). Respondent’s obstructive behavior in connection with Mrs. Millet’s deposition violated Rules 1.1(a), 3.1, 3.2, 3.3, 3.5(c), 8.4(a), and 8.4(d). Finally, the numerous rulings imposing sanctions against respondent highlighted his incompetence to handle the complex litigation into which he asserted himself, in violation of Rule 1.1(a).
*1287 The board found respondent knowingly breached duties owed to his clients and the legal system. Respondent’s frivolous filings caused injury to the legal system by requiring the courts and counsel to expend time and money addressing the unwarranted actions. Respondent was assessed with approximately $45,000 in monetary sanctions, which was largely based on amounts expended by other parties in defending his frivolous actions. In addition, Henry Also-brook, counsel for Ciba-Geigy, testified that respondent’s conduct in Price damaged his client by creating a liability on its books that the settlement was designed to erase. Most disturbing, however, is the injury or potential injury caused to respondent’s clients and to other parties. There was testimony to the effect that the settlement could not be funded |17until all appeals were final, thus, respondent’s actions delayed relief in the form of damages, medical treatment, and medical monitoring for his clients and other class members. The baseline sanction for respondent’s conduct is a lengthy suspension from the practice of law.
As aggravating factors, the board recognized respondent’s dishonest or selfish motive, pattern of misconduct, multiple offenses, and refusal to acknowledge the wrongful nature of the conduct. In mitigation, the board acknowledged the absence of a prior disciplinary record, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, inexperience in the practice of law, character and reputation, imposition of other penalties or sanctions, and remorse.
Comparing respondent’s conduct to that seen in the prior jurisprudence involving similar conduct,[14] the board acknowledged that respondent pursued claims | ^lacking *1288 merit. However, the board found there is no evidence that respondent intentionally sought to hurt or damage anyone; rather, it appears that he lacked the training and experience to handle the class action matters. The board reasoned that this incompetence, coupled with his desire to earn a substantial fee, caused him to disregard facts and evidence, the rules and orders of the courts, and his ethical obligations. Under these circumstances, and considering the injury caused by respondent’s conduct, the board determined that “significant discipline” of a three-year suspension is in order. However, because respondent has no other history of discipline, has been heavily penalized by the federal courts, and has established a good reputation among clients and colleagues in the Baton Rouge area, particularly related to his pro bono contributions, the board recommended that one year of the suspension be deferred. The board further recommended that respondent be assessed with all costs and expenses of these proceedings. Two board members dissented and would recommend that respondent be disbarred.
Both respondent and the ODC filed objections to the disciplinary board’s recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).
BflDISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444 (La.1992). Nonetheless, in cases involving credibility evaluations, we generally defer to the factual findings of the hearing committee members who act as the eyes and ears of this court. In re: Bolton, 02-0257 (La.6/21/02), 820 So.2d 548.
Respondent is charged with misconduct before the federal courts in two nationwide class action cases. Unlike a criminal conviction, the determinations of the various federal courts that respondent engaged in unprofessional conduct is not conclusive of his guilt as to those matters. In re: Bilbe, 02-1740 (La.2/7/03), 841 So.2d 729 (citing Supreme Court Rule XIX, § 19 and In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343). Nonetheless, there is more than ample evidence in the voluminous record before us to support a finding, under the clear and convincing evidentiary standard, that respondent deliberately violated court orders, filed frivolous and unsupportable petitions, motions, and appeals, and made misrepresentations to the courts. Respondent undermined the Price settlement by preventing the dismissal of a related state court case. He failed to conduct any sort of factual or *1289 legal investigation before he filed the motion to intervene on behalf of the Millet Group. When his motion was properly-denied, he decided to file frivolous appeals, for which he was sanctioned by the appellate court. He made false statements under oath concerning the cause of his client’s husband’s death in an effort to obtain attorney’s fees, and he filed false pauper pleadings on behalf of his client. It clearly appears that | ^respondent’s disruptive practices were motivated primarily by his desire to hold the Woodward settlement hostage in the hopes that he would be given an attorney’s fee that he did not earn to make him “go away.”[15] Respondent’s conduct is clearly a violation of the Rules of Professional Conduct as alleged in the formal charges.
Having found professional misconduct, we now turn to a discussion of an appropriate sanction. In considering that issue, we are mindful that the purpose of disciplinary proceedings is not primarily to punish the lawyer, but rather to maintain the appropriate standards of professional conduct, to preserve the integrity of the legal profession, and to deter other lawyers from engaging in violations of the standards of the profession. In re: Vaughan, 00-1892 (La.10/27/00), 772 So.2d 87; In re: Lain, 00-0148 (La.5/26/00), 760 So.2d 1152; Louisiana State Bar Ass’n v. Levy, 400 So.2d 1355 (La.1981). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. In re: Redd, 95-1472 (La.9/15/95), 660 So.2d 839; Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
The AJBA’s Standards for Imposing Lawyer Sanctions and our prior jurisprudence support a baseline sanction of a lengthy suspension or disbarment in this case. In aggravation, we find respondent acted with a dishonest or selfish motive, engaged in a pattern .of misconduct, and refused to acknowledge the wrongful nature of his conduct. However, we also find significant mitigating factors are present, including the absence of a prior disciplinary record, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, inexperience in the practice of law, character and reputation, imposition of other penalties or | si sanctions, and remorse. Although these mitigating factors (particularly respondent’s inexperience in the practice of law at the time of the misconduct) do not excuse his egregious actions, they do have an impact ■ on our determination of the appropriate sanction.
Considering the record as a whole, we find the appropriate sanction is a three-year suspension from the practice of law. We will defer one year of this suspension, subject to the condition that any future misconduct may be grounds for making the deferred portion of the suspension ex-ecutory or imposing additional discipline, as appropriate.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Hany A. Zohdy, Louisiana Bar Roll number 21409, be suspended from the practice of law in Louisiana for a period of three years. It is further ordered that one year of the suspension shall *1290 be deferred, subject to the condition that any future misconduct may be grounds for making the deferred portion of the suspension executory or imposing additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
KIMBALL, J., dissents.
CALOGERO, C.J., dissents and assigns reasons.

. The formal charges originally contained two counts, the second of which involved respondent’s representation of a client in an administrative proceeding before the Louisiana Board of Chiropractic Examiners. Following a hearing, the hearing committee concluded that the ODC did not carry its burden of proving by clear and convincing evidence the misconduct alleged in the second count of the formal charges. The disciplinary board agreed. with this finding and recommended that Count II be dismissed. The ODC's brief in this court does not object to the board's recommendation as it pertains to the dismissal of Count II, and accordingly, the issues relating to Count II are not discussed herein.

. The stipulation provided in its entirety as follows:
*1279 CLASS COUNSEL hereby stipulates that the RELATED CASE, including any and all claims (including, without limitation any CLAIMS defined herein) against CIBA GEI-GY CORPORATION and individual defendants, ... shall be dismissed, with prejudice, as of the APPROVAL DATE, ...
"Related Case” means "Hurley Henson, et al. v. Ciba-Geigy Corporation, et al./Docket No. 43,620, 18th Judicial District Court, Parish of Iberville, State of Louisiana.”

. Respondent has also argued that he did not personally complete the claims form, and that it was Mrs. Millet who did so, based upon information that she received to the effect that her husband's body was "engulfed” in cancer. Respondent brushed aside any suggestion that he had an obligation to determine whether the information on the claims form was true and correct, and stated that he had simply signed the form to indicate his status as Mrs. Millet’s "representative.” Respondent apparently ignored the clear language of the certification that he signed, which provided:
I ... do represent and affirm that I am the claimant representative (hereinafter “Claimant”) described in the Medical Monitoring, Treatment and Compensation Claim Form; that the information provided therein is true and correct; that Claimant understands that said information is given pursuant to a Stipulation of Settlement signed on August 26, 1994 in connection with the class action litigation entitled Price, et als. v. Ciba-Geigy Corporation, Case No. 94-0647-CB-S in the United States District Court, Southern District of Alabama, Southern Division; that UNDER PENALTY OF PERJURY pursuant to 28 USC 1746, the undersigned Claimant states that all responses and answers set forth in this Medical Monitoring, Treatment and Compensation Claim Form are true and correct!.]

. In addition, Price class members (those individuals who did not opt out of the settlement) were automatically members of the Woodward class, even though they were not exposed to Fundal, for the purpose of giving them an enhancement that allowed them 40% more benefits than that to which they were entitled and bound under Price.

. Respondent and Mr. Thompson had many years ago worked together as security guards at the Ciba-Geigy plant in St. Gabriel. They appeared in the Woodward proceeding pro hac vice, along with Baton Rouge attorneys Rolfe H. McCollister and D. Rex English. Messrs. McCollister and English provided litigation support but relied on respondent for the development of the factual and legal issues in the case. Messrs. McCollister and English withdrew as counsel of record for the Millet Group in May 1997.

.Respondent made the application for pauper status on behalf of all the Millet interve-nors based only on the affidavit of the lead plaintiff, Robin Millet. Respondent did not disclose the financial status of the other members of the Millet Group, some of whom were employed and had income. Moreover, the affidavit respondent filed in federal court did not reflect income and assets (including monthly social security benefits and vehicles owned by Mrs. Millet) that were included in the pauper application respondent filed for Mrs. Millet in her wrongful death case against Ciba-Geigy in the 19th Judicial District Court for the Parish of East Baton Rouge, State of Louisiana. The state court denied Mrs. Millet’s application for pauper status.

. The appeal was untimely because respondent should have filed it within thirty days of the entry of the district court’s order denying the motion to intervene.

. The settlement agreement in Woodward provided that the settlement would not be funded until a certain period of time elapsed following the finality of all appeals. Class counsel testified that the delay in funding caused by respondent’s frivolous filings caused the class to lose approximately $1 million in interest. The class members also did not receive treatment, medical monitoring, or compensation for approximately one year.

. Here the Magistrate Judge inserted a footnote in which he blamed respondent for a pattern "of failing to investigate in this case," citing the misrepresentations made in the claims form subject of Count 1(B) of the formal charges, as well as those made in Robin Millet’s pauper affidavit (see footnote 6 infra):
Even an attorney of Zohdy’s few years of experience simply cannot, with any semblance of credibility, ask this Court to believe that when he certifies forms filed in this Court or with an administrator that he is certifying only that information which he himself directly supplies, particularly when, as here, evidence was staring him square in the face that Lionel Millet did not have bladder cancer, did not die incident to certain carcinomas of the urinary collecting system, nor was he exposed to FUNDAL, and further, that Robin Millet had two years prior to the IFP affidavit/motion filed in this Court informed a Louisiana state court of the social security benefits she was receiving on a monthly basis.

. The formal charges were amended on March 23, 2000 and October 12, 2000 to include more specific facts and rule violations.

. These witnesses were former employees, colleagues, and clients. In addition, the Pro Bono Coordinator of the Baton Rouge Bar Association testified that respondent has contributed over 200 hours of volunteer legal work to the program. Respondent willingly accepts domestic and juvenile appointments and has never refused a request that he accept an appointment.

. Respondent was admitted to the practice of law in Louisiana in 1992 after obtaining a law degree from a university in Egypt.

. The committee specified that respondent must comply with the following conditions:
1. Pay all costs of this proceeding;
2. Receive a passing grade in courses offered by a Louisiana law school in Louisiana Code of.Civil Procedure, Federal Rules of Civil Procedure (if Respondent intends to practice in Federal Courts), Ethics and Professionalism;
3. Provide evidence to the Office of Disciplinary Counsel of his compliance with the above; and
4. Clerk for a Louisiana attorney who has been in practice at least ten years, acceptable to the Office of Disciplinary Counsel, during the period of his suspension, who, at the end of the period, makes a favorable recommendation to the Office of Disciplinary Counsel that Respondent be readmitted to practice.

. In In re: Boydell, 00-0086 (La.5/26/00), 760 So.2d 326, the attorney was disciplined for pursuing claims lacking merit. For nearly ten years, Mr. Boydell filed unwarranted and harassing demands and motions against a former client who was trying to recover an unreasonable fee. The district court rendered a significant monetary judgment against Mr. Boydell for abuse of process and intentional infliction of emotional distress. In the disciplinary proceedings, the court found disbarment to be the baseline sanction for Mr. Boy-dell’s pursuit of the vexatious litigation, but considering the mitigating factors present, suspended Mr. Boydell for three years.
In In re: Stratton, 03-3198 (La.4/2/04), 869 So.2d 794, Mr. Stratton pursued unwarranted legal claims against his former secretary. In finding misconduct, the court noted that Mr. Stratton did not act in good faith, but sought to burden third persons with largely frivolous and harassing claims. As in Boydell, the court considered the magnitude of the harm and found disbarment to be the baseline sanction, but deviated downward due to significant mitigating factors. The court suspended Mr. Stratton for three years.
Finally, In re: Bilbe, 02-1740 (La.2/7/03), 841 So.2d 729, involved an immigration matter. Ms. Bilbe was retained to file an Immigrant Visa Petition in order to have her client’s status adjusted to that of a permanent resident. She filed an application with the Immigration Court, which set a status hearing on August 7, 1997, allowing several months for the completion of the requisite Immigration and Naturalization Service (INS) approval process. On June 9, 1997, Ms. Bilbe sought a continuance of the status hearing and represented to the court that counsel for the INS had no opposition, when in fact, she had knowledge that he opposed the continuance. Upon learning of this fact, the court denied the continuance and the matter proceeded as scheduled. At the hearing, respondent refused to answer questions by the judge concerning her false representation to the court and she demanded that the court immediately decide her client’s matter. Upon inquiry, she represented to the court that the INS had approved her client's Immigrant Visa Petition, when that was not the case. When the judge asked for proof, Ms. Bilbe produced a notice for her client to appear for an interview with the INS, not an approval of the Immigrant Visa Petition. The judge attempted to explain that the "notice of interview" was not the required notice of approval, and that without the approval, he would *1288 deny the application; nevertheless, Ms. Bilbe continued to argue that the approval had been granted and that the matter was ripe for the court's consideration. Over objections and further demands by Ms. Bilbe, the court allowed Ms. Bilbe’s client, who was present in the courtroom, to discharge her and granted the client a continuance to obtain the necessary approval from the INS. Ms. Bilbe was subsequently suspended from practice before the Executive Office for Immigration Review and the INS. In Ms. Bilbe’s disciplinary proceeding, this court found that she engaged in misconduct by knowingly and willfully making false representations to the Immigration Court. It further found that she engaged in disrespectful, disruptive and grossly inappropriate behavior before the Immigration Judge. For this and other misconduct, the court found a lengthy suspension or disbarment to be the appropriate baseline sanction. Finding that the mitigating factors outweighed the aggravating factors present, the court imposed a three-year suspension.

. Like the respondent in Bilbe, respondent has attempted to cloak his conduct in the guise of "zealous advocacy.” While we do not deny that attorneys must be vigorous and zealous advocates on behalf of their clients, respondent’s conduct in the Price and Woodward class actions went far beyond such advocacy.