74 So.3d 687 (2011)
In re Paul C. MINICLIER.
No. 2011-B-1859.
Supreme Court of Louisiana.
November 4, 2011.
*688 PER CURIAM.[*]
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Paul C. Miniclier, an attorney licensed to practice law in Louisiana.

UNDERLYING FACTS
By way of background, the Cambridge Toxicology Group, Inc. ("CTG") is a company specializing in providing medical testing and expert testimony for use in litigation. Several attorneys, all of whom represented individuals allegedly harmed in the Bogalusa Gaylord chemical plant explosion, hired CTG to perform a controlled study, evaluate individual plaintiffs, and provide expert testimony. When CTG allegedly failed to perform these services, the plaintiffs' attorneys collectively declined to pay CTG's bill, which was more than $1,000,000.
*689 Respondent represented CTG in a lawsuit filed against the plaintiffs' attorneys in the United States District Court for the Eastern District of Louisiana, under docket number 02-1469. On September 30, 2002, the district judge set a deadline of October 30, 2002 for the parties to file amendments to pleadings, third-party actions, cross-claims, and counterclaims.
On August 14, 2003, respondent filed a motion for leave to file a third supplemental and amended complaint on CTG's behalf, seeking to add additional parties and causes of action (namely fraud and civil RICO claims based on an alleged conspiracy among the defendants to defraud CTG). On September 2, 2003, the magistrate judge denied the motion because she felt that the information regarding the fraud and civil RICO claims was available prior to the October 30, 2002 deadline and that the amendment would force a continuance of the trial date, then set for October 14, 2003. Respondent appealed the magistrate judge's ruling, and the district judge denied the appeal.
After the district judge's ruling, the trial was continued without date due to other factors. On November 14, 2003, respondent filed another motion for leave to amend CTG's complaint. The magistrate judge denied the motion because she still felt the information regarding the fraud and civil RICO claims was available prior to the October 30, 2002 deadline. On December 19, 2003, respondent appealed the magistrate judge's ruling, and on March 5, 2004, he filed a motion to enlarge the pre-trial deadlines established on September 30, 2002. On April 1, 2004, the district judge denied both the appeal and the motion to enlarge the pre-trial deadlines. Respondent filed in the United States Court of Appeals for the Fifth Circuit a petition for leave to appeal the district court's April 1, 2004 ruling. On May 4, 2004, the court of appeal denied the petition for leave to appeal.
On July 21, 2004, respondent filed in the United States District Court for the Eastern District of Louisiana another lawsuit on CTG's behalf. This lawsuit, filed under docket number 04-2044, named the same parties and asserted the same causes of action that respondent had included in the two previous motions for leave to amend CTG's complaint in docket number 02-1469.
The two cases were consolidated on September 8, 2004. Thereafter, the defendants filed a motion to dismiss the second case. Because the duplicative causes of action presented in the second case were not timely presented in the first case, the district judge dismissed these causes of action on October 26, 2004. In his reasons for the dismissal, the district judge noted that "this appears to be just another end run around the findings of the 02-1469 litigation." The district judge also stressed, "for all who may have missed the point, that not one more frivolous filing or harassing tactic will be permitted or allowed to go on without the imposition of the strictest of sanctions against the offending party or counsel."
On November 19, 2004, the defendants filed a motion requesting that the answers, affirmative defenses, and counterclaims filed by them in the first case be deemed adopted in the second case. The district judge granted the motion on December 3, 2004. On December 9, 2004, respondent filed a reply to the defendants' counterclaim, a counterclaim, and a third party demand. In response, the defendants filed a motion to strike because the pleadings asserted claims and defenses that had repeatedly been rejected by the court in the first case. On January 10, 2005, the district judge granted the motion to strike with respect to the counterclaim, the third *690 party demand, and several of the defenses asserted in the reply to the defendants' counterclaim, stating,
While mindful that a motion to strike is an extraordinary remedy, the Court finds that it is warranted in this extraordinary case. Several of the defenses asserted in the reply and all of the counterclaim and third party demand constitute more of the patently duplicative litigation that has run rampant throughout this litigation. CTG has a right to reply to the defendants' counterclaim and to bring its own counterclaim. It does not have a right to use its reply and counterclaim to circumvent or blatantly ignore the Court's prior rulings. Counsel's conduct is either contemptuous, or his learning capacity is grievously challenged.
The trial of the consolidated matters was held in January 2005 and resulted in a judgment largely favorable to CTG. On February 18, 2005, the defendants filed a motion for costs, expenses, and attorney's fees, pursuant to 28 U.S.C. § 1927,[1] in an attempt to recoup the unnecessary fees and costs they incurred because of the repetitive and redundant pleadings filed on CTG's behalf. With the motion, the defendants included a printout of an email sent by respondent, which they alleged revealed that his motivation for filing the repetitive and redundant pleadings was to generate attorney's fees for the attorneys on both sides.[2] After an evidentiary hearing, the district judge determined respondent "unreasonably and vexatiously multiplied this litigation within the injunction of § 1927." Accordingly, he granted the motion and, on January 12, 2006, awarded the defendants a total of $27,609.80 in attorney's fees and costs. On August 1, 2007, the United States Court of Appeals for the Fifth Circuit affirmed the district judge's judgment, stating, "The court identified numerous offending pleadings filed by Miniclier and awarded sanctions based on the time required by the defendants to respond to those pleadings. The court did not abuse its discretion in sanctioning Miniclier." Thereafter, respondent paid the defendants $29,682.57 to satisfy the judgment, which amount included interest through September 25, 2007.

DISCIPLINARY PROCEEDINGS
In December 2008, the ODC filed formal charges against respondent, alleging that his conduct, as set forth above, violated the following provisions of the Rules of Professional Conduct: Rules 3.1 (meritorious claims and contentions), 3.4 (knowing disobedience of an obligation under the rules of a tribunal), 3.5(d) (engaging in conduct intended to disrupt a tribunal),[3] 4.4(a) (in *691 representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person), 8.4(a) (violation of the Rules of Professional Conduct), and 8.4(d) (engaging in conduct prejudicial to the administration of justice). Respondent, through counsel, answered the formal charges, denying any misconduct. The matter then proceeded to a formal hearing on the merits, conducted by the hearing committee in December 2010.[4]

Hearing Committee Report
After considering the testimony and evidence presented at the hearing, the hearing committee made factual findings consistent with the facts set forth in the underlying facts section above. The committee then addressed the alleged rule violations as follows:
Rule 3.1The ODC failed to prove a violation of this rule by clear and convincing evidence. First, it was not unreasonable for respondent to refrain from initially making the fraud and civil RICO claims and then seeking to assert them in light of facts that were uncovered (or perhaps confirmed) by discovery because the federal rules require a heightened standard for pleading civil RICO and other fraud-based claims. Furthermore, the federal rules generally allow for liberal amendment to the pleadings. While the judges were well within their authority and discretion to determine that respondent's delay in seeking to amend the complaint was an undue delay, no evidence exists in this record to determine when he actually knew or should have known that a sufficient cause of action could have been stated. Second, while an undue delay might justify denial of leave to amend two weeks before trial, it might not justify denial of leave to amend after the trial date has been continued. Each motion is decided based on a totality of the circumstances, which often change. Finally, a court is never required to deny leave where there has been an undue delay. The court still retains the discretion to grant leave to amend, in light of the other facts and circumstances.
Rule 3.4Respondent violated this rule by filing a counterclaim on December 9, 2004 because, on October 26, 2004, the *692 district judge obligated respondent to refrain from filing another motion or pleading attempting to assert the civil RICO and fraud claims that had previously been rejected.
Rule 4.4(a)Even assuming respondent was motivated in part by his, or his client's, desire to embarrass, harass, delay, or burden the defendants in the underlying litigation, it cannot be said that there was no other substantial purpose for the repeated attempts to assert the civil RICO claims. As recognized by the magistrate judge, the purpose of the amendment would be "to provide new grounds for a claim for attorneys' fees and costs." In fact, respondent testified that his client wanted to make sure attorney's fees were recovered. Respondent further indicated that he was motivated by a concern regarding the potential application of collateral estoppel, as well as a concern about being sued for malpractice, given the client's strong beliefs and desire to pursue the fraud claims.
Rule 8.4(d)Respondent violated this rule by filing the counterclaim in December 2004 despite the court's strong admonition in October 2004.
Rule 3.5(d)While respondent may have, in fact, disrupted the tribunal, there is not clear and convincing evidence that this was his intent, as required by this rule.
The committee went on to state:
In this case, Respondent appears to have zealously, and indeed overzealously, prosecuted the underlying litigation on behalf of his client. While the March 2005 e-mail exchange may have been imprudent and unprofessional, it does not appear to betray an intent to put Respondent's attorney fee interest before the interests of his own client. To the contrary, the record suggests that in seeking (repeatedly) to advance the Civil RICO and other fraud claims, Respondent was actually attempting to secure attorneys' fees, on top of the client's recovery, at the client's insistence, in order to make the client whole. Respondent credibly testified, in response to questioning from the Hearing Committee, that, at the time of the e-mail exchange, he was essentially working on a contingent fee basis; that he had not been paid an hourly fee in months; and that the client, even after being made aware of the e-mail, never complained about his fee.
The committee then determined the following aggravating factors are present: prior disciplinary offenses (a 1993 admonition for engaging in conduct intended to disrupt a tribunal and engaging in conduct prejudicial to the administration of justice), refusal to acknowledge the wrongful nature of the conduct, and substantial experience in the practice of law (admitted 1985). In mitigation, the committee found only the imposition of other penalties or sanctions.
Further noting that respondent was sanctioned publicly by the United States District Court and required to pay more than $27,000 in fees and costs to the opposing counsel, the majority of the committee recommended respondent be suspended from the practice of law for three months, fully deferred. The committee's public member dissented and would recommend a one year and one day suspension.
Both respondent and the ODC filed objections to the hearing committee's report and recommendation.

Disciplinary Board Recommendation
After review, the disciplinary board determined that the hearing committee's factual findings are not manifestly erroneous. The board also determined that the committee *693 correctly applied the Rules of Professional Conduct. Specifically, the board found that respondent violated Rule 3.4 by continuing in his attempts to advance the fraud and civil RICO claims after the court repeatedly warned him that it was not going to allow those claims. Respondent also violated Rule 8.4(d) because his conduct forced the defendants to expend additional time and money defending his repeated attempts to circumvent the court's rulings and frustrated the legal system by prolonging the underlying legal matter. Although the committee did not address the alleged violation of Rule 8.4(a), the board found that respondent violated the rule by violating Rules 3.4 and 8.4(d).
The board agreed with the committee that respondent did not violate Rules 3.1, 4.4(a), and 3.5(d). With respect to Rule 3.1, the board disagreed with the ODC's argument that filing a pleading (even one based on non-frivolous facts) contrary to a court's order makes the pleading frivolous. The board found respondent did not violate Rule 4.4(a) because, even though he attempted to circumvent the previous rulings of the court, he did so in an attempt to protect the interests of his client. Finally, he did not violate Rule 3.5(d) because, even though his actions disrupted the tribunal, this was not his intent.
The board further determined respondent knowingly violated duties owed to the legal system. His misconduct caused actual harm to the legal system and the opposing parties in the form of significant frustration, delay, and additional expense. After considering the ABA's Standards for Imposing Lawyer Sanctions, the board determined the baseline sanction is suspension.
In aggravation, the board found prior disciplinary offenses, refusal to acknowledge the wrongful nature of the conduct, and substantial experience in the practice of law. In mitigation, the board found the absence of a dishonest or selfish motive, imposition of other penalties or sanctions, and remoteness of prior offenses.
Turning to the issue of an appropriate sanction, the board determined that respondent's misconduct is analogous to, although not as egregious as, the misconduct in In re: Zohdy, 04-2361 (La.1/19/05), 892 So.2d 1277. In Zohdy, an attorney engaged in a lengthy series of frivolous litigation in two separate federal class actions. For this misconduct, the court suspended the attorney from the practice of law for three years, with one year deferred.
Given the totality of the circumstances, and in light of the fact that respondent's misconduct is not as egregious as the misconduct in Zohdy, the board recommended respondent be suspended from the practice of law for three months, fully deferred, subject to one year of unsupervised probation.
Neither respondent nor the ODC filed an objection to the disciplinary board's recommendation.

DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks, 09-1212 (La.10/2/09), 18 So.3d 57.
In this matter, the record supports a finding that respondent knowingly disobeyed the district court's rulings and, thus, engaged in conduct prejudicial to the administration of justice. The record also supports a finding that respondent violated *694 the Rules of Professional Conduct as found by the disciplinary board.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent's actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass'n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass'n v. Whittington, 459 So.2d 520 (La.1984).
Respondent knowingly violated duties owed to the legal system, causing actual harm. The baseline sanction for this misconduct is suspension. The record supports the aggravating and mitigating factors found by the board. Additionally, the mitigating factor of full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings is present.
With respect to the appropriate sanction in this matter, three prior cases provide guidance. However, we find the misconduct in each of the three cases was more egregious than respondent's misconduct. Those three cases are In re: Zohdy, 04-2361 (La.1/19/05), 892 So.2d 1277, as discussed by the board, In re: Cook, 06-0426 (La.6/16/06), 932 So.2d 669, and In re: LaMartina, 10-0093 (La.7/2/10), 38 So.3d 266. In Cook, an attorney filed repetitive and unwarranted pleadings in ongoing litigation and made frivolous and harassing claims for discovery against third persons not involved in the litigation. For this misconduct, we suspended the attorney from the practice of law for three years, with all but eighteen months deferred. In LaMartina, an attorney, who was on criminal probation for engaging in criminal conduct at her child's school, violated the judge's instructions and court-imposed procedures for her to visit the school. For this misconduct, we suspended the attorney from the practice of law for one year and one day, fully deferred, subject to two years of unsupervised probation with conditions.
In light of the less egregious nature of respondent's misconduct as compared to the misconduct found in the prior jurisprudence, we will adopt the board's recommendation and suspend respondent from the practice of law for three months, fully deferred, subject to one year of unsupervised probation.

DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that Paul C. Miniclier, Louisiana Bar Roll number 17062, be and he hereby is suspended from the practice of law for three months. This suspension shall be deferred in its entirety, subject to respondent's successful completion of a one-year period of unsupervised probation. The probationary period shall commence from the date respondent and the ODC execute a formal probation plan. Any failure of respondent to comply with the conditions of probation, or any misconduct during the probationary period, may be grounds for making the deferred suspension executory, or imposing additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10. 1, with legal interest to commence thirty days from the date *695 of finality of this court's judgment until paid.
VICTORY, J., dissents and would impose a harsher sanction.
VICTORY, J., dissents.
I dissent and would impose a harsher sentence.
NOTES
[*] Chief Justice Kimball not participating in the opinion.
[1] 28 U.S.C. § 1927 provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.
[2] On March 25, 2005, the defendants' attorney, James Garner, sent an email to respondent stating, "Paul, in light of the rulings and verdict, haven't we had our last trial." On March 28, 2005, respondent sent a response email, in which he stated, "You Wish!!!! No, I plan to make your firm a lot [sic] more money, not to mention mine. As long as they pay you sooner than my client. See you at the 5th  I hope you have that appeal bond ready. paul."
[3] The formal charges actually alleged a violation of Rule 3.5(c). However, significant changes to the Rules of Professional Conduct took effect on March 1, 2004. At that time, Rule 3.5(c) became Rule 3.5(d). Because the ODC alleged respondent engaged in misconduct that occurred both before and after this change took effect, we have referenced the current version of the rule.
[4] At the hearing, respondent testified that he waited until August 2003 to file the third supplemental and amended complaint because he did not have the information, which was obtained through the discovery process, to support the additional claims and defendants until that time. He also indicated that the claims were never ruled to be non-meritorious. He was not allowed to amend the complaint because the amendment would force a continuance of the trial date. When the judge later continued the trial without date, he tried again to file a supplemental and amended complaint because the grounds for the initial denial were no longer present. The judge again denied his request, reasoning that he knew or should have known of the new claims before the October 2002 deadline.

Thereafter, he filed a new lawsuit to bring the claims based on case law holding that if an amended complaint is not allowed, the proper course of action is to file a new lawsuit. Dussouy v. Gulf Coast Investment Corp., 660 F.2d 594, (5th Cir. 1981). He believed the new claims were not frivolous, and he had no intention to harass the opposing parties by filing the new complaint. However, he was concerned his client would accuse him of malpractice if he failed to file the new complaint to introduce the new claims. Finally, he again brought up the new claim as a reply to the defendant's counterclaim in the new lawsuit.
Regarding the email he sent to Mr. Garner, he stated that he was being sarcastic because Mr. Garner had already submitted substantial bills to his clients. The defendants were also fighting paying the judgment, so both sides were in appeal mode. He acknowledged that his email was inappropriate, but suggested his relationship with Mr. Garner had become acrimonious.