*267
 
 I,ATTORNEY DISCIPLINARY PROCEEDINGS
 

 PER CURIAM.
 
 *
 

 This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Elise Mary Beth LaMartina, an attorney licensed to practice law in Louisiana.
 

 UNDERLYING FACTS
 

 During the 2004-05 school year, respondent’s child attended Tchefuncte Middle
 
 *268
 
 School (“TMS”) in Mandeville, a public school in the St. Tammany Parish School Board (“School Board”) district. Respondent frequently visited TMS to drop off and pick up her child or to eat with her child in the school cafeteria. However, during her visits, respondent repeatedly violated the rules and regulations established by TMS and the School Board regarding a visitor’s presence at school. For example, respondent frequently either did not sign in with TMS’s office to gain permission to be on school grounds or disregarded the limits of the permission granted by TMS’s office by visiting areas of the school where she was not permitted to be (i.e., the playground, classroom hallways, and her child’s classroom during class time).
 
 [1]
 
 The |2TMS administration determined respondent’s repeated failure to report to the office, sign in, and obtain permission to be on school grounds presented safety concerns.
 

 Furthermore, respondent frequently drove her child to school. For safety reasons, TMS segregated the bus zone area from the parent pick-up/drop-off area. Nonetheless, on numerous occasions, respondent entered and exited TMS’s campus via the bus zone area, where she would drop off or pick up her child.
 
 [2]
 

 Additionally, on two occasions in January 2005, respondent’s conduct at TMS led to the involvement of the Mandeville Police Department. In the first incident, TMS’s principal, Roxanne Lagarde, reported to the police that respondent was in the school’s hallway near the classrooms on January 21, 2005 despite being restricted to visiting the cafeteria only. Ms. Lagarde and the School Board superintendent did not press charges against respondent for this incident, but they indicated they would press charges if she disobeyed the rules again. In the second incident, Ms. La-garde reported to the police that respondent was inside the school without permission on January 28, 2005. At that time, respondent invited Ms. Lagarde to call the police to have her arrested because that would “help her lawsuit against the school.”
 

 Based on Ms. Lagarde’s complaint, the police obtained a warrant for respondent’s arrest for violating La. R.S. 17:416.10.
 
 [3]
 
 On
 
 *269
 
 February 1, 2005, the police ^arrested respondent. According to the police report, respondent resisted arrest by refusing to exit her vehicle pursuant to the officer’s instructions.
 
 [4]
 
 The officer was then forced to pull respondent out of the car by her wrist. She again passively resisted and refused to put down her cell phone. As this point, the officer had to forcibly handcuff respondent.
 

 On March 30, 2005, respondent was charged with one count of violating La. R.S. 17:416.10 and one count of resisting arrest, a violation of La. R.S. 14:108. Judge William Knight conducted a misdemeanor trial on March 2, 2006, immediately following which he found respondent guilty of both violations.
 
 State of Louisiana v. Elise LaMartina,
 
 No. 394117 on the docket of the 22nd Judicial District Court for the Parish of St. Tammany.
 
 [5]
 
 Judge Knight sentenced respondent to six months in jail, suspended, for the resisting arrest charge and thirty days in jail, suspended, for the ^unauthorized access to a public school charge. Judge Knight also placed respondent on probation for two years and dictated in open court conditions of probation, including the following:
 

 1. You will under no circumstances enter any school grounds at St. Tammany Parish School Board without specific authorization as outlined by the school personnel. [
 
 6
 
 ]
 

 * ⅜ * ⅝
 

 3. You will pay a monthly supervision fee of $50.00 per month each and every month of your probation.
 

 On March 28, 2006, Ms. Lagarde sent respondent a letter informing her of the limitations placed upon her presence at TMS, based on Judge Knight’s conditions of probation.
 

 Respondent was in law school when some of the events at issue in this matter occurred. In 2006, she applied for admission to the bar and notified the Committee on Bar Admissions of her conviction. The Director of Character and Fitness subsequently approved respondent’s admission to the Louisiana bar. Accordingly, respondent was admitted to the practice of law in Louisiana on October 13, 2006.
 

 
 *270
 
 Thereafter, respondent violated her probation by entering the campus of a school in the School Board district without authorization on three occasions in early 2007.
 
 [7]
 
 She also failed to pay the $50 monthly supervision fee. On June 11, 2007, respondent stipulated to violating the conditions of her probation, and Judge Knight revoked her probation, ordering her to serve twenty days in jail, with credit for time served. On March 17, 2008, Judge Knight terminated respondent’s probation and indicated her probation was unsatisfactorily resolved.
 

 | .DISCIPLINARY PROCEEDINGS
 

 In January 2008, the ODC filed one count of formal charges against respondent, alleging that by violating the conditions of her criminal probation, she violated the following provisions of the Rules of Professional Conduct: Rules 3.4(c) (knowing disobedience of an obligation under the rules of a tribunal), 8.4(a) (violation of the Rules of Professional Conduct), and 8.4(b) (commission of a criminal act that reflects adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer). Respondent answered the formal charges, arguing her arrest and conviction were “orchestrated” by the School Board’s attorney to thwart her efforts to pursue legal action against the School Board.
 
 [8]
 
 She also argued her violation of the conditions of her probation was only a technical violation. Therefore, she contended the formal charges against her should be dismissed.
 

 Formal Hearing
 

 This matter proceeded to a formal hearing on the merits conducted by the hearing committee in October 2008. Respondent appeared and represented herself. The ODC called Roxanne Lagarde to testify before the committee. Respondent testified on her own behalf and on cross-examination by the ODC.
 

 Respondent testified that she “unknowingly may have technically violated” her probation because she believed the first condition of probation only applied to TMS when, in fact, it applied to all schools in the School Board’s district. She stipulated to violating her probation because Judge Knight indicated he would only keep her in | ftjail overnight
 
 [9]
 
 and then discontinue her probation. She also assumed her probation would be considered satisfactorily resolved when, in fact, Judge Knight terminated her probation as unsatisfactorily resolved on March 17, 2008. She further claimed her arrest was due to Ms. Lagarde’s vindictiveness because she went over Ms. Lagarde’s head to the School Board superintendent to have her child switched to a different teacher. Additionally, she claimed that, following her conviction, Ms. Lagarde and the other TMS school administrators intentionally made her child tardy for class on numerous occasions in order to bring a family-in-need-of-services case against her, which
 
 *271
 
 would be a violation of her probation. As such, she started taking her child into TMS through Pontchartrain Elementary School to avoid TMS’s main office.
 

 Hearing Committee Report
 

 After considering the testimony and evidence presented at the hearing, the hearing committee made factual findings consistent with the underlying facts described above. Based on those facts, the committee concluded respondent had the specific intent to violate Judge Knight’s conditions of probation, noting the following: 1) Judge Knight’s courtroom instructions to respondent were clear (“any school grounds at St. Tammany Parish School Board”); 2) the fact that Ms. Lagarde’s March 28, 2006 letter to respondent only included limitations to TMS’s campus should not allow respondent to ignore Judge Knight’s instructions or rationalize her behavior; 3) respondent stipulated to the subsequent violations of the criminal statute when she stipulated to violating her probation; 4) the only possible reason respondent was discovered on the campus of Pontchartrain Elementary School was because she |7must have been attempting to enter, or had already entered and left, TMS via a back door; and 5) Judge Knight was well aware of how frequently respondent “visited” TMS, and he attempted to create, through his conditions of probation, an orderly process for her future visits to the school, which respondent ignored. Thus, the committee concluded respondent chose to deliberately violate the letter and spirit of Judge Knight’s instructions and the court-imposed procedure for respondent to visit school property. The committee also determined respondent did not provide concrete evidence of conspiratorial wrongdoing by any of her accusers that would excuse her criminal conduct.
 

 Based on these findings, the committee determined respondent violated the Rules of Professional Conduct as alleged in the formal charges. The committee further believed respondent’s conduct reflects poorly on her character and fitness as a member of the bar. However, the committee did not believe respondent used her legal knowledge to provoke abusive legal tactics. The committee also found no evidence of severe mental or emotional problems. Furthermore, the committee did not believe respondent’s “federal court litigation rise[s] to the level of a pattern of legal strategy that is abusive of the judicial system by a member of the bar.”
 

 The committee further determined the baseline sanction is suspension, based on the ABA’s
 
 Standards for Imposing Lawyer Sanctions.
 
 In aggravation, the committee found a dishonest or selfish motive, a pattern of misconduct, multiple offenses, and refusal to acknowledge the wrongful nature of the conduct. In mitigation, the committee found the following factors: absence of a prior disciplinary record, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, and inexperience in the practice of law (admitted 2006). The committee also noted no client was harmed by respondent’s misconduct.
 

 | sUnder these circumstances, the committee recommended respondent be suspended from the practice of law for one year and one day. The committee specifically observed that “Respondent’s continued failure to take
 
 any
 
 responsibility for her actions or exercise any self-control over her accusations of conspiracy bodes ill for her career as an attorney.” [Emphasis in original.]
 

 Neither respondent nor the ODC filed an objection to the hearing committee’s recommendation. However, in her brief to the disciplinary board, respondent argued her conduct, for which she was punished in the criminal law system, is not deserving
 
 *272
 
 of further punishment in the attorney disciplinary system. Therefore, she asked the board to either dismiss the charges against her or recommend a sanction no harsher than a public reprimand.
 

 Disciplinary Board Recommendation
 

 After review, the disciplinary board rejected respondent’s claim that she misunderstood what school areas were restricted by her conditions of probation. The board also rejected respondent’s claim that she was the victim of a conspiracy by School Board personnel, which was her reason for stipulating to violating the conditions of her probation. The board determined respondent’s alternative explanations of her misunderstanding and a conspiracy failed to demonstrate manifest error in the hearing committee’s findings. Therefore, the board accepted the committee’s finding that respondent deliberately violated the conditions of her probation. The board determined respondent violated the conditions of her probation by her unauthorized entry onto school property on three occasions and by her failure to pay her $50 monthly supervision fee. Based on these findings, the board | determined respondent violated the Rules of Professional Conduct as alleged in the formal charges.
 

 The board further determined respondent knowingly, if not intentionally, violated duties owed to the legal system and the public. Her misconduct caused actual harm to the legal and criminal justice systems and potential harm by trespassing upon school property, which is a safety concern. After considering the ABA’s
 
 Standards for Imposing Lawyer Sanctions
 
 and relevant case law, the board determined the baseline sanction is disbarment.
 

 In aggravation, the board found a dishonest or selfish motive, a pattern of misconduct, multiple offenses, and refusal to acknowledge the wrongful nature of the conduct. In mitigation, the board found the following factors: absence of a prior disciplinary record, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, and imposition of other penalties or sanctions. The board rejected the mitigating factor of inexperience in the practice of law because respondent’s misconduct was not related to the practice of law. Likewise, the board ascribed no mitigation to the fact that respondent’s misconduct did not harm her clients. The board also specifically found respondent has no mental health issues.
 

 In light of the mitigating factors, and determining that the goals of the attorney disciplinary system would be achieved by imposing a fully deferred suspension, the board recommended respondent be suspended for three months, fully deferred, subject to one year of probation.
 

 Although neither respondent nor the ODC filed an objection to the board’s recommendation, on June 1, 2010, this court ordered briefing addressing the issue of an appropriate sanction. The order also instructed the parties to “specifically address |inwhether an evaluation and treatment from a mental health care professional are appropriate for respondent based upon her conduct in this case.” Both respondent and the ODC filed briefs in response to the court’s order.
 

 DISCUSSION
 

 Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re:
 
 Banks,
 
 09-1212 (La.10/2/09), 18 So.3d 57.
 

 
 *273
 
 In this matter, the ODC charged respondent with violating the conditions of her criminal probation, stemming from her conviction of unauthorized access to a public school and resisting arrest, which conviction occurred prior to her admission to the practice of law in Louisiana. The record reflects respondent stipulated to violating the conditions of her probation after she went onto the campus of a public school in the School Board’s district on three occasions without authorization and failed to pay her $50 monthly supervision fee. Accordingly, respondent has violated the Rules of Professional Conduct as alleged in the formal charges, based on her violation of the conditions of her probation following her admission to the Louisiana bar.
 

 Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct.
 
 Louisiana State Bar Ass’n v. Reis,
 
 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the Inseriousness of the offenses involved considered in light of any aggravating and mitigating circumstances.
 
 Louisiana State Bar Ass’n v. Whittington,
 
 459 So.2d 520 (La.1984).
 

 The record reflects respondent acted knowingly, if not intentionally, in entering the school’s campus without authorization when the conditions of her probation clearly prohibited her fl-om doing so. In acting as she did, she violated duties owed to the legal system and the public. She caused actual harm to the legal system and potential harm to the public by creating a potentially unsafe situation for students and staff at the school. The baseline sanction for this misconduct is a period of suspension.
 

 The record supports the following aggravating factors: a dishonest or selfish motive, a pattern of misconduct, multiple offenses, and refusal to acknowledge the wrongful nature of the conduct. The record supports the following mitigating factors: absence of a prior disciplinary record, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, and imposition of other penalties or sanctions.
 

 In determining an appropriate sanction, the board considered
 
 In re: Katner,
 
 08-2398 (La.2/6/09), 15 So.3d 52, and
 
 In re: Robinson,
 
 01-2772 (La.5/14/02), 819 So.2d 280. In
 
 Katner,
 
 the court imposed a one year and one day suspension upon an attorney who pled guilty to stalking and harassing an individual via telephone, later had her related criminal probation revoked, and pled guilty to DWI. In
 
 Robinson,
 
 the court suspended an attorney for one year, with eleven months deferred, followed by one year of probation with the condition that the attorney seek an evaluation and treatment from a mental health care provider, after the attorney stalked her dentist, violated injunctions prohibiting her from contacting her dentist, and was held in 112contempt of court for those violations. The board distinguished the instant case from
 
 Katner
 
 because respondent was not convicted of DWI, and the board distinguished the instant case from
 
 Robinson
 
 with its determination that respondent has no mental health issues. While the record is clear that respondent has not been convicted of a DWI, we do not agree with the board that respondent has no mental health issues. Although the record contains no evidence that respondent is mentally ill, in our view, her tenacious behavior does call her mental health into question.
 

 
 *274
 
 Based on
 
 Katner
 
 and
 
 Robinson,
 
 we find the fully deferred three-month suspension recommended by the board is unduly lenient. Accordingly, we reject the disciplinary board’s recommendation. We will suspend respondent from the practice of law for one year and one day, fully deferred, subject to a two-year period of unsupervised probation with the following conditions:
 

 (1) Within thirty days of the finality of the court’s judgment, respondent shall submit to an examination by a licensed mental health care professional, selected or approved by the ODC, and comply with any plan of treatment prescribed by that professional, at respondent’s cost.
 

 (2) Respondent shall further advise the ODC of the results of the examination as well as the recommended treatment, if treatment is ordered by the mental health care professional, and shall provide her medical records to the ODC upon its request.
 

 (3) If treatment is ordered, respondent shall provide the ODC with monthly reports from the mental health care professional to ensure she complies with treatment.
 

 In the event respondent fails to comply with these conditions, or if she engages in any misconduct during the period of probation, the deferred suspension may become executory, or additional discipline may be imposed, as appropriate.
 

 | ^DECREE
 

 Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record and the briefs filed by the parties, it is ordered that Elise Mary Beth LaMar-tina, Louisiana Bar Roll number 30583, be and she hereby is suspended from the practice of law for one year and one day. This suspension shall be deferred in its entirety, subject to respondent’s successful completion of a two-year period of unsupervised probation governed by the conditions set forth in this opinion. The probationary period shall commence from the date respondent and the ODC execute a formal probation plan. Any failure of respondent to comply with the conditions of probation, or any misconduct during the probationary period, may be grounds for making the deferred suspension executory, or imposing additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
 

 *
 

 Chief Justice Kimball not participating in the opinion.
 

 [1]
 

 .The testimony at respondent's criminal trial revealed that, on one occasion, respondent entered TMS after school hours and asked a custodian to open the door to her child’s classroom so she could obtain evidence against the teacher to prove the teacher was lying about her child's behavior in class. Further testimony revealed respondent entered the playground area without permission and asked another student to get off of a swing so her child could swing.
 

 Her child’s teacher testified that respondent walked her child to the classroom almost every morning after class had already started. The teacher also testified that, two or three times a week, respondent would call her into the hall to talk while class was in session. Furthermore, during a parent-teacher conference, respondent physically threatened the teacher by charging at her across the table because she did not agree with the grades the teacher had given her child. She also called the teacher a liar.
 

 [2]
 

 . Testimony at respondent’s criminal trial revealed that, on one occasion, a teacher observed respondent drop off her child in the bus zone area after the tardy bell rang. The teacher instructed respondent to take her child to the office to be properly signed in as tardy, but respondent waved the teacher off and drove away.
 

 [3]
 

 . La. R.S. 17:416.10, entitled "Visitor authorization; public elementary or secondary school grounds, buildings, and other facilities," provides in pertinent part as follows:
 

 ... [N]o person shall go on public elementary or secondary school grounds or in any public elementary or secondary school building or other school facility as a visitor during school hours without authority of the appropriate school official as provided by rules adopted pursuant to this Section.
 

 [4]
 

 .The arresting officer testified at the criminal trial as follows:
 

 She refused to get out of the car, she wanted to make a phone call first to call Judge Gleason, she said, and at that point I opened the door, again I told her, I didn’t ask her no more, I told her, I said, step out of the car right now, you're under arrest. She still refused to. She kind of balled up with the phone like this, refused to get out of the car. I went to go grab on to her and she is kind of swatting me away, kind of like-how to best describe, like a child throwing a temper tantrum. I don’t think she was really trying to hit me as much as she was swatting me away because she didn't want to go. She said she wasn't ready to be arrested.
 

 The assisting officer testified at the criminal trial as follows:
 

 [The arresting officer] went to try to grab her to pull her out, that's when she was pushing off with that right hand while she was trying to talk on the cell phone, trying to push him off and one time I saw her take her, I believe her right foot and kick at him to try to push him off to keep him from pulling her out of the vehicle.
 

 [5]
 

 . Respondent sought review of her conviction in the court of appeal, which denied the writ application without comment on September 14, 2009.
 
 State v. LaMartina,
 
 09-1171 (La.App. 1st Cir.9/14/09) (unpublished). This court denied respondent's writ application as untimely on December 12, 2009.
 
 State v. LaMartina,
 
 09-2257 (La.12/18/09), 23 So.3d 928.
 

 [6]
 

 . The written minutes of the proceeding indicated this condition of probation read "do not enter school property without authorization.”
 

 [7]
 

 . In order to gain entry to TMS without going through TMS's office for authorization, respondent apparently walked across the campus of Pontchartrain Elementary School, which physically adjoins TMS.
 

 [8]
 

 . In March 2007, respondent file a lawsuit in federal court against the School Board and other defendants.
 
 LaMartina-Howell, et al. v. St. Tammany Parish School Board, et al.,
 
 No. 2:07-cv-01168-SSV-ALC on the docket of the United States District Court for the Eastern District of Louisiana. Based on the information in the record, the case was stayed pending the appeal of respondent's criminal conviction and her application for clemency, which she filed with the Louisiana Board of Pardons on November 14, 2007.
 

 [9]
 

 .Respondent ended up spending three days in jail before being released.